**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : |
| | : Chapter 7 |
| TELETOUCH COMMUNICATIONS, INC., <u>et al.</u>, | : |
| | : Case No. 13-12620 (MFW) |
| Debtors. | : Jointly Administered |
| | : |
| | : **Hearing Date: TBD** |
| | : **Objection Deadline: TBD.** |

**TRUSTEE'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING THE
TRUSTEE, *NUNC PRO TUNC*, IN HIS SOLE DISCRETION AND BUSINESS
JUDGMENT, TO SELL THE DEBTORS' INVENTORY IN ONE OR MORE
PRIVATE SALES, WITHOUT FURTHER NOTICE OR HEARING, AND FREE
AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**

Charles A. Stanziale, Jr. (the "<u>Trustee</u>"), in his capacity as the duly appointed, qualified and serving Chapter 7 Trustee of Teletouch Communications, Inc. and Progressive Concepts, Inc. (collectively, the "<u>Debtors</u>"), by and through his attorneys McCarter & English, LLP, hereby submits this emergency motion (the "<u>Motion</u>") for entry of an order (the "<u>Proposed Form of Order</u>"), pursuant to sections 105(a) and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (a) authorizing the Trustee, *nunc pro tunc*, in his sole discretion and business judgment, to (i) sell the Inventory (defined below) in one or more private sales, without further notice or hearing, and free and clear of all liens, claims, encumbrances and interests (collectively, the "<u>Claims</u>") with the Claims, if any, attaching to the net proceeds of the sales with the same validity, extent and priority as had attached to the Inventory immediately prior to the sales; and (ii) to pay those necessary fees and expenses incurred in connection with the sales of the Inventory; and (b) waiving the fourteen day stay provided by Bankruptcy Rule 6004(h).   In support of the Motion, the Trustee respectfully

represents as follows:

## I.        Jurisdiction, Venue and Predicates for Relief

1.        The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.        The predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004.

## II.        Background

### A.        General Background

1.        On October 3, 2013 (the "Petition Date"), the Debtors filed their respective voluntary petitions for relief under chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

2.        On October 3, 2013, the Office of the United States Trustee for the District of Delaware appointed Charles A. Stanziale, Jr. as the Chapter 7 Trustee for the Debtors.

3.        On October 28, 2013, after notice and hearing, an order was entered allowing, *inter alia*, the Trustee to conduct limited operations of the Debtors and obtain credit and incur debt in the form of the post-petition financing from DCP Teletouch Lender, LLC ("DCP") with certain adequate protection afforded to DCP  (the "Operating Order") [Docket No. 31][1].

---

[1] The Operating Order was also entered in the Progressive Concepts, Inc. bankruptcy case as Docket No. 36.

4.      On November 12, 2013, an *Order Directing Joint Administration of the Debtors'
Cases Pursuant to Federal Rule of Bankruptcy Procedure 1015(b)* (the "Joint Administration
Order") [Docket No. 46][2] was entered.

5.      Prior to the Petition Date, Teletouch Communications, Inc. ("Teletouch") had
offered a comprehensive suite of telecommunications products and services, including cellular,
two- way radio, GPS-telemetry, wireless messaging and public safety equipment.  Teletouch
acted as a primary authorized services provider and billing agent of AT&T Products and Services
to consumers, governmental agencies and businesses.

6.      Progressive Concepts, Inc. ("Progressive") is the primary operating business of
Teletouch and is a wholly owned subsidiary of Teletouch.  Progressive operated a national
distribution business serving national cellular carrier agents as well as auto dealers and consumer
electronics retailers with product sales and support.

7.      Upon information and belief, certain efforts were made prior to the Petition Date
in an attempt to reorganize the Debtors.

8.      Upon information and belief, among the Debtors' alleged liabilities are the
maturity of real estate debt and a dispute with regard to a sales and use tax audit assessment with
the State of Texas.

9.      In an effort to maximize value for creditors, immediately upon the Trustee's
appointment, he commenced negotiations and entered into an asset purchase agreement (the
"Purchase Agreement") with The BMS Enterprises, Inc. ("BMS") to purchase the Debtors'
corporate office building located at 5718 Airport Freeway, Haltom City, Texas, which includes
excess land adjacent to that building and a billboard in Fort Worth, Texas (but which excludes

---

[2] The Joint Administration Order was also entered in the Progressive Concepts, Inc. bankruptcy case as Docket No.
53.

ME1 16742460v.1

certain assets as more particularly described in the Purchase Agreement) (the "Debtors' Corporate Headquarters") for $3.3 Million.  A motion was filed and a hearing was held on November 13, 2013, approving the stalking horse agreement of sale, approving the bidding procedures and to grant other relief (the "Headquarters Sale Motion").

B.    **The Debtors' Debt Structure**

10.    On May 3, 2007, Progressive entered into a Deed of Trust and Security Agreement with United Commercial Bank, predecessor to East West Bank, as may have been amended from time to time, which secured a promissory note of Progressive in the principal amount of $2,850,000 (the "East West Loan").  The East West Loan is secured by a first lien on the Debtors' Corporate Headquarters.  As of the Petition Date, East West alleges that the Debtor owed it approximately $2,024,774.27.

11.    Effective May 3, 2007, the Debtors entered into a loan agreement, as may have been amended from time to time, with Jardine Capital Corporation ("Jardine") to refinance previous debt in the amount of $650,000 (the "Jardine Loan").  The Jardine Loan is secured by a second lien on the Debtors' Corporate Headquarters. Upon information and belief, Jardine is owed approximately $553,927.70 including accrued interest as of October 17, 2013.

12.    The Trustee believes sufficient funds should be available upon consummation of the sale of the Debtors' Corporate Headquarters to satisfy the liens on such property securing the East West Loan and the Jardine Loan.

13.    On April 30, 2008, the Debtors executed a Loan and Security Agreement (as amended from time to time, the "Thermo Loan Agreement") with Thermo Credit, LLC ("Thermo"), to secure a revolving credit facility in a maximum amount of up to $5,000,000, which debt was evidenced several notes executed by the Debtors and payable to Thermo, and

secured by liens on all or substantially all of the prepetition assets of the Debtors. Upon information and belief, as of August 11, 2013, the Debtors were indebted to Thermo in the amount of $2,873,287.75 under the Thermo Loan Agreement and the loan documents related thereto.

14.     On February 8, 2013, Teletouch and Progressive entered into a Loan and Security Agreement (as amended from time to time, the "DCP Loan Agreement") with DCP, which provided Teletouch and Progressive with (i) a revolving credit facility in a maximum amount of $6.0 Million, and (ii) a maximum of up to $2.0 Million pursuant to a standby term loan.

15.     The DCP Loan Agreement and certain related loan documents granted DCP liens and security interests on all existing and after-acquired assets of the Debtors, specifically including, without limitation the following: all property or other assets now existing or hereafter acquired, real or personal, tangible or intangible, and whether owned by, consigned to, or held by, or under the care, custody or control of the Debtors, including all money, cash, cash equivalents, accounts, deposit accounts and deposits, investment property, inventory, equipment, fixtures, goods, chattel paper, electronic chattel paper, tangible chattel paper, documents, instruments, letters of credit, letter of credit rights, supporting obligations, commercial tort claims, books and records, real property interests, leasehold estates in real property of a debtor, as lessee, general intangibles (including all intellectual property, payment intangibles, contract rights, choses in action, and software), and all of Debtors' other interests in property of every kind and description, and the products, profits, rents of, dividends or distributions on, accessions to, and all proceeds (including tort claims, insurance claims and insurance proceeds) of any of the foregoing, and all rights and remedies applicable to such property; and further including, without limitation, all rights of the Debtors to proceeds arising under agreements with AT&T,

ME1 16742460v.1

including, without limitation, upon the exercise by Progressive of the AT&T transfer right and/or upon the termination or expiration of the AT&T agreements.  Upon information and belief, pursuant to the DCP Loan Agreement and certain related loan documents, DCP holds (i) first priority liens and security interests on all tangible and intangible assets of the Debtors, (ii) a third mortgage lien on the Debtors' Corporate Headquarters, (iii) a second mortgage lien on the Debtors' property located at 2121 Old Henderson Highway, Smith County, Tyler, Texas, and (iv) liens on the Debtors' deposit accounts pursuant to certain account control agreements executed by the Debtors and their depository banks.

16.    On February 8, 2013, Thermo and DCP also entered into that certain Subordination and Intercreditor Agreement (the "Subordination Agreement") wherein Thermo agreed to subordinate the indebtedness and security interests of the Debtors to Thermo under the Thermo Loan Agreement and related loan documents to the indebtedness and security interests of the Debtors to DCP Loan Agreement and related loan documents.  As a result of the Subordination Agreement, Thermo's secured claims and liens are subordinate to DCP's secured claims and liens.

17.    Upon information and belief, as of the Petition Date, the Debtors were indebted to DCP under the DCP Loan Agreement in the approximate amount of  $1,295,558.52.

**C.    The Inventory**

18.    Located at the Debtors' Corporate Headquarters are approximately 12,000 pieces of inventory comprised of cellular telephones and tablets, cellular accessories, car audio equipment, other 12 volt electronics and cellular signal amplification products, plus there are various cellular phones and tablets that were primarily issued to employees and stores for demo purposes (collectively, the "Inventory").  A list of the Inventory is attached hereto as **Exhibit A**.

19.     The Inventory is not including in the sale to BMS.

20.     While the Trustee believes that a sale of the Inventory is in the ordinary course of the Debtors' business, which the Trustee is now overseeing pursuant to the Operating Order, in an abundance of caution, the Trustee seeks authority of this court to liquidate the Inventory.

21.     Pursuant to the Operating Order, the Trustee has retained several former employees including the former Chief Financial Officer Douglas Sloan, with whom the Trustee has conferred concerning those parties and former customers most likely to purchase lots of the Inventory.  Under the direction of the Trustee, Mr. Sloan has reached out to various parties who may have an interest in purchasing various items of the Inventory.

22.     Given the nature of the Inventory and the rapidly changing landscape of the electronics and wireless markets, the Trustee requires the ability to liquidate the Inventory on an expedited basis without delay so as not to lose potential purchasers who need to have immediate possession of the Inventory to be in a position to sell same for this current holiday season, which is already upon us.

23.     In addition, the Trustee believes that a sale of the Inventory on a lot-by-lot basis without further court order to approve same would maximize recovery to the estates by not incurring additional legal fees for preparing motions to approve the sales or such additional costs such as copying and mailing.  Finally, given the pending sale of the Debtors' Corporate Headquarters where the majority of the Inventory is located, it is important that the Trustee liquidate the Inventory in a timely manner to sell all or some of the Inventory or to seek an alternate sales process.

24.     The Trustee therefore requests authority, in his business judgment,  to sell lots of the Inventory in amounts not to exceed $20,000 free and clear of Claims without further order of

ME1 16742460v.1

the Court.  In the event the Trustee seeks to sell a lot of Inventory greater than $20,000, the Trustee will notice a separate sale motion.

25.     Nothing herein shall limit the Trustee's ability to retain an auctioneer in the event he concludes in his business judgment that same would be in the best interests of the Debtors' estates.

### III.    Summary of Relief Requested

26.     By this Motion, the Trustee seeks entry of an order, substantially in the Proposed Form of Order, (a) authorizing the Trustee *nunc pro tunc* authority as of the date of filing of the motion (i) to sell the Inventory in one or more private sales, without further notice or hearing, and free and clear of all Claims with the Claims, if any, attaching to the net proceeds of the sales with the same validity, extent and priority as had attached to the Inventory prior to the sales, and (ii) to pay those necessary fees and expenses incurred in connection with the sales of the Inventory; and (b) waiving the fourteen day stay provided by Bankruptcy Rule 6004(h).  The Trustee intends to deposit the net proceeds of the sales of the Inventory into a bank account and not make any disbursement of such net proceeds without further order of this Court.

### IV.    Basis for Relief Requested

### A.    The Trustee Should Be Authorized to Enter Into One or More Private Sales

27.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he Trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  In pertinent part, Bankruptcy Rule 6004 provides that "all sales not in the ordinary course of business may be by private sale or by public auction."  Fed. R. Bankr. P. 6004(f)(1).

28.     To approve the use, sale, or lease of property out of the ordinary course of business, this Court must find some articulated business justification for the proposed action. *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification and good faith tests of *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in *Abbotts Dairies*); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions").

29.     This fundamental analysis does not change if the proposed sale is private, rather than public. *See, e.g., In re Ancor Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)(1)"). The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property." *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991), vacated on other grounds, 165 B.R. 1 (D.P.R. 1991); accord *In re Caynon P'Ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985) (recognizing that section 363 of the Bankruptcy Code clearly indicates that the manner of the sale is within the discretion of the trustee).

30.     The Trustee submits that ample business justification exists for the relief sought herein for at least three reasons.  First, authorizing the Trustee, in his sole discretion and business judgment, to enter into one or more private sales on the terms and conditions that the Trustee

may deem appropriate and reasonable, without the entry of an order subsequent to the entry of the Proposed Form of Order, appears to be the best means available to expeditiously maximize the value of the Inventory for the benefit of creditors.  Second, the usual process of obtaining court approval for each sale of a piece of the Inventory (a) would create costs to the Debtors' estates that may undermine or eliminate the economic benefits of the underlying sales; and (b) in some instances, may hinder the Trustee's ability to take advantage of sale opportunities that are available only for a limited time.  Thus, the added costs and possibilities for lost opportunities would not produce any additional benefit and could, in fact, be detrimental to the Debtors' estates and their creditors.

31.     Third, approving the relief requested herein would allow the Trustee to fulfill his affirmative duty under section 704(1) of the Bankruptcy Code to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."  11 U.S.C. § 704(1).

### B.     One or More Sales Free and Clear of Claims is Appropriate Under Section 363(f) of the Bankruptcy Code

32.     Section 363(f) of the Bankruptcy Code permits a trustee to sell property free and clear of another party's interest in the property if:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

11 U.S.C. § 363(f).  Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will be sufficient to permit the sale of the

Inventory free and clear of any and all Claims that may be asserted herein. *See Citicorp Homewoners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (sale "free and clear" may be approved provided the requirements of at least one subsection are met); *see also In re Dundee Equity Corp.,* 1992 Bankr. LEXIS 436, * 12 (Bankr. S.D.N.Y. Mar. 6, 1992) (a "sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

33.    The Trustee proposes that absence of an objection to the relief sought in this Motion be deemed consent within the meaning of section 363(f)(2) of the Bankruptcy Code. *See Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D. N.J. 1994) (by not objecting to the sale motion, the secured creditor was deemed to consent under section 363(f)(2) of the Bankruptcy Code); *see also Pelican Homestead & Sav. A'ssn v.Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same). As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for any proposed sales of the Inventory free and clear of any and all Claims.

### C.    Waiver of Bankruptcy Rule 6004(h)

34.    The Trustee requests that the Court waive Bankruptcy Rule 6004(h) to enable any private sales of the Inventory that may be consummated after the filing of this Motion and prior to the hearing on this Motion to close less than fourteen days after the date of the entry of the order approving the relief sought herein. The Trustee believes there is no reason to prevent any transactions contemplated hereby from being consummated as soon as possible.

### V.    Notice

35.    Notice of this Motion has been provided to (i) the Core Service List consisting of (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to the Debtors, (c) the Internal Revenue Service, and (d) counsel to DCP Teletouch Lenders, LLC, and (ii) the Master Service List consisting of (a) any parties whose interests are directly affected by a

specific pleading including all known lienholders of the Debtors, and (b) those persons and entities who have formally appeared and requested service, all in accordance with the *Order Establishing Notice and Service Procedures* entered in the Debtors' cases.  The Trustee submits that no other or further notice need be provided.

### VI.    No Prior Request

36.    No prior request for the relief requested herein has been made to this or any other court.

### VII.    Conclusion

WHEREFORE, the Trustee respectfully requests the entry of an order, substantially, in the form of the Proposed Order, (a) authorizing the Trustee (i) to sell the Inventory in one or more private sales, without further notice or hearing, and free and clear of all Claims with the Claims, if any, attaching to the net proceeds of the sales with the same validity, extent and priority as had attached to the Inventory prior to the sales, and (ii) to pay those necessary fees and expenses incurred in connection with the sales of the Inventory; (b) waiving the fourteen day stay provided by Bankruptcy Rule 6004(h); and (c) granting such other and further relief to the Trustee as this Court deems necessary and appropriate.

Dated:  November 14, 2013
       Wilmington, Delaware

Respectfully submitted,

**McCARTER & ENGLISH, LLP**

By: */s/ Katharine L. Mayer*
Katharine L. Mayer (DE # 3758)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Telephone 302.984.6300
Facsimile 302.984.6399
kmayer@mccarter.com

*- and -*

12

Charles A. Stanziale, Jr., Esq.
Jeffrey T. Testa, Esq.
Scott H. Bernstein, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
cstanziale@mccarter.com
jtesta@mccarter.com
sbernstein@mccarter.com

*Attorneys for the Chapter 7 Trustee*

13

ME1 16742460v.1