**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : |
| | : Chapter 7 |
| TELETOUCH COMMUNICATIONS, | : |
| INC., *et al.*, | : Case No. 13-12620 (MFW) |
| | : Jointly Administered |
| Debtors. | : |
| | : (Proposed) Hearing Date: January 8, 2013 at 2:00 p.m. |
| | : (Proposed) OBJ DL: December 31, 2013 at 2:00 p.m. |

**MOTION FOR AN ORDER AUTHORIZING THE TRUSTEE
TO SELL CERTAIN OF THE DEBTORS' INVENTORY, EQUIPMENT, VEHICLES
AND FIXED ASSETS IN A PRIVATE SALE FREE AND CLEAR OF ALL LIENS,
CLAIMS, ENCUMBRANCES AND INTERESTS**

Charles A. Stanziale, Jr. (the "Trustee"), in his capacity as the duly appointed, qualified and serving Chapter 7 Trustee of Teletouch Communications, Inc. and Progressive Concepts, Inc. (collectively, the "Debtors"), by and through his attorneys, McCarter & English, LLP, hereby submits this motion (the "Motion") for entry of an order (the "Proposed Form of Order"), pursuant to Sections 105(a) and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing the Trustee to sell certain of the Debtors' inventory, equipment, vehicles and fixed assets pursuant to a private sale to Tiger Group free and clear of all liens, claims, encumbrances and interests (collectively, the "Claims") with the Claims, if any, attaching to the net proceeds of the sales with the same validity, extent and priority as had attached to the Debtors' inventory, equipment, vehicles and fixed assets immediately prior to the sale, and (b) waiving the fourteen day stay provided by Bankruptcy Rule 6004(h). In support of the Motion, the Trustee respectfully represents as follows:

**I.    Jurisdiction, Venue and Predicates for Relief**

1.    The United States Bankruptcy Court for the District of Delaware (the

ME1 16881581v.5

"Bankruptcy Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The predicates for the relief requested herein are Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004.

## II. Background

### A. General Background

3. On October 3, 2013 (the "Petition Date"), the Debtors filed their respective voluntary petitions for relief under Chapter 7 of Title 11 of the Bankruptcy Code in the Bankruptcy Court.

4. On October 3, 2013, the Office of the United States Trustee for the District of Delaware appointed Charles A. Stanziale, Jr. as the Chapter 7 Trustee for the Debtors.

5. On October 28, 2013, after notice and hearing, an order was entered allowing, *inter alia*, the Trustee to conduct limited operations of the Debtors and obtain credit and incur debt in the form of the post-petition financing from DCP Teletouch Lender, LLC ("DCP") with certain adequate protection afforded to DCP (the "Operating Order") [Docket No. 31][1].

6. On November 12, 2013, an Order Directing Joint Administration of the Debtors' Cases Pursuant to Federal Rule of Bankruptcy Procedure 1015(b) (the "Joint Administration Order") [Docket No. 46][2] was entered.

7. Prior to the Petition Date, Teletouch Communications, Inc. ("Teletouch") had offered a comprehensive suite of telecommunications products and services, including cellular,

---

[1] The Operating Order was also entered in the Progressive Concepts, Inc. bankruptcy case as Docket No. 36.

[2] The Joint Administration Order was also entered in the Progressive Concepts, Inc. bankruptcy case as Docket No. 53.

two- way radio, GPS-telemetry, wireless messaging and public safety equipment. Teletouch acted as a primary authorized services provider and billing agent of AT&T Products and Services to consumers, governmental agencies and businesses.

8. Progressive Concepts, Inc. ("Progressive") is the primary operating business of Teletouch and is a wholly owned subsidiary of Teletouch. Progressive operated a national distribution business serving national cellular carrier agents as well as auto dealers and consumer electronics retailers with product sales and support.

9. Upon information and belief, certain efforts were made prior to the Petition Date in an attempt to reorganize the Debtors.

10. Upon information and belief, among the Debtors' alleged liabilities are the maturity of real estate debt and a dispute with regard to a sales and use tax audit assessment with the State of Texas.

11. In an effort to maximize value for creditors, immediately upon the Trustee's appointment, he commenced negotiations and entered into an asset purchase agreement (the "Purchase Agreement") with The BMS Enterprises, Inc. ("BMS") to purchase the Debtors' corporate office building located at 5718 Airport Freeway, Haltom City, Texas, which includes excess land adjacent to that building and a billboard in Fort Worth, Texas (but which excludes certain assets as more particularly described in the Purchase Agreement) (the "Debtors' Corporate Headquarters") for $3.3 Million. The sale to BMS also includes all office furniture (desks, cubicles, and chairs), all conference room furniture, all break room furniture and appliances, all training room furniture, and the warehouse shelving in back half of warehouse. A motion was filed and a hearing was held on November 13, 2013, approving the stalking horse agreement of sale, approving the bidding procedures and to grant other relief (the "Headquarters

Sale Motion"), and a hearing to approve the sale is scheduled for January 6, 2014, with an anticipated closing to occur no later than January 31, 2014.

### B. The Merchandise to be Sold

12. Located at the Debtors' Corporate Headquarters are approximately 12,000 pieces of inventory (consisting of cellular telephones and tablets, cellular accessories, car audio equipment, other 12 volt electronics and cellular signal amplification products), and various cellular phones and tablets that were primarily issued to employees and stores for demo purposes various computer equipment (consisting of computers, monitors, servers, racks, ups, etc.) (collectively, the "Inventory").  The Inventory includes, but is not limited to, those items on the listing attached hereto as **Exhibit A**.  Also located at the Debtors' Corporate Headquarters are various fixed assets consisting of office equipment (consisting of copiers, printers, scanners, etc.), office décor, warehouse equipment (consisting of shelving in front part of warehouse, forklifts, scan guns, packaging and shipping equipment and supplies), certain break room items (a pool table, a foosball table, vending machines, an ice machine), all retail fixtures, and various vehicles (consisting of three vans and two trucks) (collectively, the Fixed Assets").  The Fixed Assets include, but are not limited to, those items on the listing attached hereto as **Exhibit B**[3].  The Inventory and the Fixed Assets shall collectively be referred to as the "Merchandise"[4].

13. The Merchandise is not included in the sale to BMS.

14. The Trustee has conferred with the former Chief Financial Officer Douglas Sloan ("Mr. Sloan"), with regard to the value of the Merchandise and has solicited offers from

---

[3] The list of Fixed Assets was pulled from Progressive's fixed asset accounting system and the accuracy of this information was not verified by Progressive, but Tiger Group has inspected all of the assets located at 5718 Airport Freeway in Fort Worth, Texas and has based its bid on the assets it was able to inspect and verify.

[4] To the extent any of the Merchandise includes computers, the Trustee shall have the opportunity to remove any and all proprietary or personal information from the servers prior to the closing.

4

ME1 16881581v.5

auctioneers as well as bulk purchasers for a liquidation of the Merchandise. With the impending closing of the Debtors' corporate Headquarters, an immediate sale of the Merchandise is critical to avoid unnecessary administrative costs.

15. After negotiations, the Trustee has determined in his business judgment that an offer presented by the Tiger Group to purchase the Merchandise in bulk is in the best interests of the estates.

### C.  Disclosures Under Local Rule 6004-1(b)(iv)

16. Pursuant to Local Rule 6004-1(b)(iv), the Trustee sets forth the following disclosures relating to the proposed sale:

- **Sale to an Insider**: The Trustee is not aware that Tiger Group is an Insider of the Debtors.

- **Agreements with Management**: No agreements with management have been entered into in connection with the sale.

- **Releases**: In consideration for access to the Debtors' Corporate Headquarters to take possession of and remove the Merchandise or to conduct a subsequent sale of the Merchandise at the Debtors' Corporate Headquarters, Tiger Group shall execute a *Release and Indemnification of Any and All Claims*, which shall indemnify and release the Trustee, his agents and professionals from any and all liability, claims, demands, damages, third-party actions, rights of recovery, causes of action or suits at law or in equity, known or unknown, asserted or unasserted, contingent or non-contingent, including claims for contribution and/or indemnification, of whatever nature and particularly on account of all damages of any kind which may result from, or may in the future develop in any way, related to the removal or subsequent sale of the Merchandise.

- **Private Sale/No Competitive Bidding**: The sale is being conducted pursuant to the competitive bidding process detailed in the Motion.

- **Closing and Other Deadlines**: The closing shall occur as set forth in the Motion.

- **Purchase Price**: The purchase price for the Merchandise is Sixty Four Thousand Dollars ($64,000) (the "Purchase Price").

- **Good Faith Deposit**: Tiger Group shall tender a Deposit in the amount of $5,000 to the Trustee within three (3) business days of the filing of this Motion, which

shall be credited against the Purchase Price at closing. The balance of the Purchase Price shall be due at the closing.

- **Interim Arrangements with Tiger Group**: The Trustee will make arrangements with the landlord to provide Tiger Group access to the Debtors' Corporate Headquarters, at no cost, through and including February 3, 2014. Tiger Group shall agree to execute a site access agreement with the landlord for any period of time that Tiger Group is on-site at the Debtors' Corporate Headquarters post-closing through February 3, 2014. Tiger Group shall represent and warrant that it shall cease operations at the Debtors' Corporate Headquarters no later than February 3, 2014. Should Tiger Group need additional time to remove the Merchandise, Tiger Group shall negotiate those terms with the landlord or other third party successful bidder of the Debtors' Corporate Headquarters, and neither the Trustee nor his professionals shall have any liability with regard to same. The Trustee makes no representation that the landlord would be amenable to any extension of time past February 3, 2014.

- **Record Retention**: Not applicable except for any proprietary information contained on the Debtors' servers as referenced in Footnote 4 herein.

- **Sale Free and Clear**: The Trustee is seeking to sell the Merchandise free and clear of liens and other interests (other than the Permitted Encumbrances) pursuant to Section 363(f) of the Bankruptcy Code.

- **No Credit Bid by DCP**: DCP has agreed to waive its right to credit bid at the auction. DCP and its representatives shall have the right to attend the auction, and the Trustee may consult with DCP regarding the auction and the bids received at the auction.

- **Relief from Bankruptcy Rule 6004(h)**: As noted in the Motion, the Trustee is requesting relief from the 14-day stay imposed by Rule 6004(h). The value of the Merchandise is deteriorating with the passage of time. Absent relief from the stay provisions of Rule 6004(h), the delay in Closing will result in further deterioration of the value of the Merchandise.

D. **Additional Terms of the Private Sale and Solicitation of Higher or Better Offers**

17. The Merchandise is being sold strictly on an "AS IS, WHERE IS" basis, WITH ALL "FAULTS". Neither the Trustee nor any of the Trustee's agents or retained professionals shall make any claims, representations, warranties, or promises about the condition or the value of the Merchandise. The Trustee, his agents and retained professionals expressly disclaim any and all express or implied warranties, including but not limited to any implied warranties of

fitness, habitability, or merchantability.

18. In the event Tiger Group subsequently liquidates the Merchandise and recovers more than $250,000 in net proceeds within six months of February 3, 2014, it shall split the net proceeds with 60% to be distributed to the bankruptcy estate and 40% to be distributed to the Successful Bidder.

19. Tiger Group has represented to the Trustee that it has the financial wherewithal to close on the sale on an all cash basis and that it will remove, or otherwise abandon, all of the Merchandise from the Debtors' Corporate Headquarters no later than February 3, 2014.

20. If Tiger Group is not named the Successful Bidder (as defined herein), then it shall have the right to apply to the Bankruptcy Court for an expense reimbursement in an amount not to exceed $50,000 (the "Expense Reimbursement"). The Expense Reimbursement must be approved by the Bankruptcy Court.

21. Any party wishing to submit a higher or better offer must do so in writing so as to be received by the Trustee no later than 4:00 p.m. on January 2, 2014 (the "Overbid Objection Deadline") and shall consist of all of the following: (i) an offer in an amount of no less than $114,000 representing the Purchase Price plus the Expense Reimbursement, (ii) a deposit in the amount of $5,000 to be sent via wire, cashier's check or bank check, (iii) proof of financial wherewithal reasonably acceptable to the Trustee, which shall enable the purchase to close the sale on an all cash basis, and (iv) a certification that said third party bidder will be bound by the same representations and warranties made by Tiger Group as identified in this Motion and all other terms identified in this Motion, including but not limited to paragraph 28 below.

22. All due diligence by Tiger Group or any third party bidder shall be completed by the Overbid Objection Deadline.

23.    If any party does submit a timely higher or better offer to the Trustee by the Overbid Objection Deadline, the Trustee shall conduct a telephonic auction on January 7, 2014, which shall be transcribed.

24.    At the conclusion of the auction, the Trustee, in his sole discretion shall name the party who submitted the highest and best bidder (the "Successful Bidder") and shall name the party who submitted the next highest and best offer (the "Next Highest Bidder").  The highest offer shall not necessarily be deemed the highest and best offer.  In assessing whether an offer is both higher and better, the Trustee reserves the right to test the bona fides, and assess the credit risk, of all persons or entities submitting offers.

25.    Failure of the Court to approve the sale shall not be deemed a default by the Successful Bidder or the Trustee.

26.    All deposits shall be held in a segregated escrow account and shall be returned to the depositing party within five (5) business days following the auction, unless: (i) the depositing party is the Successful Bidder; or (ii) the Successful Bidder fails to proceed to close the Sale through no fault of the Trustee, in which case the deposit shall become property of the Debtors' estates.

27.    The closing shall occur on the date of entry of an order approving the sale, unless mutually agreed upon in writing by the Trustee and the Successful Bidder.  In the event that the sale fails to close during such time period, then the Seller shall be authorized, but not required, to consummate the sale with the Next Highest Bidder.

28.    The Successful Bidder shall represent and warrant that (i) it has the financial wherewithal to close on an all cash basis upon entry of the order approving the sale and that it will remove, or otherwise abandon, all of the Merchandise from the Debtors' Corporate

8

Headquarters no later than February 3, 2014; (ii) in the event it liquidates the Merchandise and recovers more than $250,000 net within six months of February 3, 2014, it shall split the proceeds with 60% to be distributed to the bankruptcy estate and 40% to be distributed to the Successful Bidder; and (iii) in consideration for access to the Debtors' Corporate Headquarters to take possession of and remove the Merchandise or to conduct a subsequent sale of the Merchandise at the Debtors' Corporate Headquarters, it shall execute a *Release and Indemnification of Any and All Claims*, which shall indemnify and release the Trustee, his agents and professionals from any and all liability, claims, demands, damages, third-party actions, rights of recovery, causes of action or suits at law or in equity, known or unknown, asserted or unasserted, contingent or non-contingent, including claims for contribution and/or indemnification, of whatever nature and particularly on account of all damages of any kind which may result from, or may in the future develop in any way, related to the removal or subsequent sale of the Merchandise.

29. The Trustee reserves the right to modify, adjourn, or extend any of the deadlines established herein, provided, however, that such modification, adjournment or extension does not result in Tiger Group having less than 26 days from the Order Entry until the time it must complete its work at the facility.

### III.   Summary of Relief Requested

30. By this Motion, the Trustee seeks entry of an order, substantially in the Proposed Form of Order, (a) authorizing the Trustee to sell the Merchandise to Tiger Group free and clear of all Claims with the Claims, if any, attaching to the net proceeds of the sales with the same validity, extent and priority as had attached to the Merchandise prior to the sale, and (b) waiving the fourteen day stay provided by Bankruptcy Rule 6004(h).

31. Pursuant to the Operating Order, the Trustee has retained several former

employees including the Mr. Sloan with whom the Trustee has conferred concerning those parties and former customers who were most likely to purchase the Merchandise in a bulk sale or in various smaller lots.

32. Given the nature of the Merchandise and the rapidly changing landscape of the electronics and wireless markets, the Trustee requires the ability to liquidate the Merchandise without delay.

33. In addition, the Trustee believes that a sale of the Merchandise in bulk would maximize recovery to the estates by not incurring additional legal fees for preparing motions to approve the sales in lots over $20,000 or through a cumbersome auction process. Finally, given the pending sale of the Debtors' Corporate Headquarters where the majority of the Merchandise is located, it is important that the Trustee liquidate the Merchandise in a timely manner to avoid unnecessary administrative expense.

## IV. Basis for Relief Requested

### A. The Trustee Should Be Authorized to Enter Into the Private Sale

34. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he Trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In pertinent part, Bankruptcy Rule 6004 provides that "all sales not in the ordinary course of business may be by private sale or by public auction." FED. R. BANKR. P. 6004(f)(1).

35. To approve the use, sale, or lease of property out of the ordinary course of business, this Court must find some articulated business justification for the proposed action. *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly

10

adopting the articulated business justification and good faith tests of *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in Abbotts Dairies); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions").

36.     This fundamental analysis does not change if the proposed sale is private, rather than public. *See, e.g., In re Ancor Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)(1)"). The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property."); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991), vacated on other grounds, 165 B.R. 1 (D.P.R. 1991); *accord In re Canyon P'Ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985) (recognizing that section 363 of the Bankruptcy Code clearly indicates that the manner of the sale is within the discretion of the trustee).

37.     The Trustee submits that ample business justification exists for the relief sought herein for several reasons. First, authorizing the Trustee, in his sole discretion and business judgment, to enter into the private sale on the terms and conditions that the Trustee may deem appropriate and reasonable, appears to be the best means available to expeditiously maximize the value of the Merchandise for the benefit of creditors. Second, the usual process of obtaining retaining an auctioneer to sell the Merchandise (a) would create costs to the Debtors' estates that

11

may undermine or eliminate the economic benefits of the underlying sale; and (b) in some instances, may hinder the Trustee's ability to take advantage of the sale opportunity that is available only for a limited time. Thus, the added costs and possibilities for lost opportunities would not produce any additional benefit and could, in fact, be detrimental to the Debtors' estates and their creditors.

38. Third, approving the relief requested herein would allow the Trustee to fulfill his affirmative duty under section 704(1) of the Bankruptcy Code to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(1).

### B. One or More Sales Free and Clear of Claims is Appropriate Under Section 363(f) of the Bankruptcy Code

39. Section 363(f) of the Bankruptcy Code permits a trustee to sell property free and clear of another party's interest in the property if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will be sufficient to permit the sale of the Merchandise free and clear of any and all Claims that may be asserted herein. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (sale "free and clear" may be approved provided the requirements of at least one subsection are met); *see also In*

*re Dundee Equity Corp.,* 1992 Bankr. LEXIS 436, * 12 (Bankr. S.D.N.Y. Mar. 6, 1992) (a "sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

40. The Trustee proposes that absence of an objection to the relief sought in this Motion be deemed consent within the meaning of Section 363(f)(2) of the Bankruptcy Code. *See Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D. N.J. 1994) (by not objecting to the sale motion, the secured creditor was deemed to consent under section 363(f)(2) of the Bankruptcy Code); *see also Pelican Homestead & Sav. A'ssn v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same). As such, the requirements of Section 363(f) of the Bankruptcy Code would be satisfied for any proposed sale of the Merchandise free and clear of any and all Claims.

### C. Waiver of Bankruptcy Rule 6004(h)

41. The Trustee requests that the Court waive Bankruptcy Rule 6004(h) to enable any private sales of the Merchandise that may be consummated after the filing of this Motion and prior to the hearing on this Motion to close less than fourteen days after the date of the entry of the order approving the relief sought herein. The Trustee believes there is no reason to prevent any transactions contemplated hereby from being consummated as soon as possible.

*The Remainder Of This Page Was Intentionally Left Blank*

### V. Notice

42. Notice of this Motion has been provided to (i) the Core Service List consisting of (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to the Debtors, (c) the Internal Revenue Service, and (d) counsel to DCP Teletouch Lenders, LLC, (ii) the Master Service List consisting of (a) any parties whose interests are directly affected by a specific pleading including all known lienholders of the Debtors, and (b) those persons and entities who have formally appeared and requested service; and (iii) any party having expressed an interest in some or all of the Merchandise, all in accordance with the *Order Establishing Notice and Service Procedures* entered in the Debtors' cases. The Trustee submits that no other or further notice need be provided.

### VI. No Prior Request

43. No prior request for the relief requested herein has been made to this or any other court.

### VII. Conclusion

WHEREFORE, the Trustee respectfully requests the entry of an order, substantially, in the form of the Proposed Order, (a) authorizing the Trustee (i) to sell the Merchandise to Tiger Group free and clear of all Claims with the Claims, if any, attaching to the net proceeds of the sales with the same validity, extent and priority as had attached to the Merchandise prior to the sales, (b) waiving the fourteen day stay provided by Bankruptcy Rule 6004(h); and (c) granting such other and further relief to the Trustee as this Court deems necessary and appropriate.

Dated: December 20, 2013
      Wilmington, Delaware

Respectfully submitted,

**McCARTER & ENGLISH, LLP**

By: */s/ Katharine L. Mayer*
Katharine L. Mayer (DE # 3758)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Telephone 302.984.6300
Facsimile 302.984.6399
kmayer@mccarter.com

 - *and* -

Charles A. Stanziale, Jr., Esq.
Jeffrey T. Testa, Esq.
Scott H. Bernstein, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
cstanziale@mccarter.com
jtesta@mccarter.com
sbernstein@mccarter.com

*Attorneys for the Chapter 7 Trustee*