IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TELETOUCH COMMUNICATIONS,<br>INC., *et al.*,<br><br>Debtors. | : <br>: Chapter 7<br>: <br>: Case No. 13-12620 (MFW)<br>: Jointly Administered<br>: <br>: **Related Docket Nos. 37 & 52**<br>: |

**SALE ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363,
AND 365 AND RULES 2002, 6004, 6006 AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE APPROVING (I) THE SALE OF
THE DEBTORS' CORPORATE HEADQUARTERS TO PURCHASER THE BMS
ENTERPRISES, INC. FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES
AND INTERESTS; AND (II) APPROVING THE ASSUMPTION AND ASSIGNMENT
OF THAT CERTAIN UNEXPIRED LEASE**

Upon the motion (the "Motion"), filed by Charles A. Stanziale, in his capacity as the Chapter 7 Trustee (the "Trustee") of Teletouch Communications, Inc. and Progressive Concepts, Inc. ("Progressive") (collectively, the "Debtors"), by and through his counsel McCarter & English, LLP, pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for: (i) approval of the sale of the corporate headquarters owned by Progressive (the "Debtors' Corporate Headquarters") free and clear of all liens, claims, encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature whatsoever (each, a "Lien or Claim" and collectively, the "Liens and Claims") to The BMS Enterprises, Inc. and/or its designee (together, "Purchaser"), pursuant to that certain asset purchase agreement, dated as of October 29, 2013 (the "Purchase Agreement"), by and among the Trustee and

ME1 16687695v.9

Purchaser; (ii) authorizing the assumption and assignment of that certain unexpired lease (the "Assumed Contract"); and (iii) granting such other and further relief as the Court deems just and proper; and the Trustee having marketed the Debtors' Corporate Headquarters for higher and better offers; and it appearing after seeking higher and better offers that the offer accepted by the Trustee from Purchaser is the highest and best offer received for the Debtors' Corporate Headquarters;[1] and the Court having determined that Purchaser is a good faith Purchaser in accordance with section 363(m) of the Bankruptcy Code; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Purchase Agreement; and the Court having reviewed and considered the Motion, all arguments made and all evidence presented at the hearing on the Motion (the "Sale Hearing"); and upon the record of the sale Hearing, any and all declarations and other materials submitted by the Trustee in connection with the Motion; and it further appearing that the relief provided in this Order is in the best interest of the Debtors' estates and all other parties in interest; and after due deliberation thereon, and for other good and sufficient cause appearing therefor:

## THIS COURT HEREBY FINDS AND DETERMINES THAT:

A. **Findings and Conclusions**. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. **Jurisdiction and Venue**. The Court has jurisdiction over the Motion, the sale, and

---

[1] The Trustee shall retain all right, title and interest in and to all assets of any nature whatsoever which are defined as the Excluded Assets in the Purchase Agreement.

the Sale Hearing pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C. **Statutory Predicates**. The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and 9014 and Local Rule 6004-1.

D. **Notice**. In accordance with the provisions of the *Order Pursuant to Bankruptcy Code Sections 105, 363, 365 and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving the Stalking Horse Asset Purchase Agreement and the Break-Up Fee Relating to the Sale of the Debtor's Debtors' Corporate Headquarters, Subject to Higher and Better Offers, Free and Clear of Liens, Claims and Encumbrances, (B) Approving the Notice and Sale Procedures Related Thereto, (C) Approving the Cure Procedures and the Form and Manner of Notice Thereof; and (D) Setting Auction and Hearing Dates* [Docket No. 52] (the "Bidding Procedures Order"), and as evidenced by the affidavits of service and/or the affidavits of publication previously filed with this Court, the Trustee (i) served the Notice of Bid Deadline, Auction, and Sale Hearing[2] together with a copy of the Bidding Procedures upon the Auction Notice Parties referenced in paragraph 40 of the Motion (the "Notice of Bid Deadline"), (ii) served the Cure Notice upon each Counterparty, and (iii) timely caused to be published a summarized version of the Notice of Bid Deadline in the *Dallas Morning News and the Fort Worth Star-Telegram*. The notice given by the Trustee of the Motion, the Sale Hearing, and the sale, constitutes appropriate notice under the circumstances and complies with sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, Local Rule 6004-1

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

ME1 16687695v.9

and the Bidding Procedures Order. No other or further notice of the Motion, the Sale Hearing, the Auction, or the sale is required by applicable law.

E. **Title in the Debtors' Corporate Headquarters**. The Debtors' Corporate Headquarters constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

F. **Business Justification**. The Trustee has demonstrated both (i) good, sufficient, and sound business purpose and justification for the sale, including the assumption and assignment of the Assumed Contract; and (ii) compelling circumstances for the sale pursuant to section 363(b) of the Bankruptcy Code.

G. **Opportunity to Bid**. As demonstrated by: (i) the testimony and other evidence proffered or adduced at the Sale Hearing; and (ii) the representations of counsel made on the record at the Sale Hearing, the Trustee marketed the Debtors' Corporate Headquarters and conducted the sale process in compliance with the Bankruptcy Code and the Bidding Procedures Order. The sale process set forth in the Bidding Procedures Order afforded a full and fair opportunity for any qualified entity to make a higher or otherwise better offer to purchase the Debtors' Corporate Headquarters.

H. **Highest or Otherwise Best Offer**. The stalking horse bidder, The BMS Enterprises, Inc. ("BMS"), was the only party to submit a qualified bid, and therefore, no auction was held. The Trustee declared BMS to be the successful bidder (the "Successful Bidder" or the "Purchaser"). The total consideration to be paid by Purchaser in the amount of $3.3 Million for the Debtors' Corporate Headquarters is the highest or otherwise best offer received by the Trustee.

I. **Good Faith Purchaser**. Purchaser is a good faith buyer under section 363(m) of the Bankruptcy Code, will be acting in good faith in consummating the sale and is not an "insider"

ME1 16687695v.9

as that term is defined in section 101(31) of the Bankruptcy Code. As such, Purchaser is entitled to all of the protections afforded thereby.

J.  The Purchase Agreement and the sale contemplated thereby have been negotiated, proposed and entered into by the Trustee and Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Trustee, nor Purchaser, have engaged in any conduct that would cause or permit Purchase Agreement to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

K.  The terms and conditions of the Purchase Agreement and the sale, including the total consideration to be realized by the Debtors' estates pursuant to the Purchase Agreement, are fair and reasonable, and therefore approval of the sale at this time is in the best interests of the Debtors' estates.

L.  **Corporate Power and Authority**. No consents or approvals, other than those expressly provided for in the Purchase Agreement, or expressly set forth herein, are required for the Trustee to consummate such transactions. Subject to the entry of this Order, Purchaser has full corporate power and authority to execute and deliver the Purchase Agreement and the sale and to perform all of its obligations thereunder, and the sale and assignment of the Assumed Contracts have been duly and validly authorized by all corporate authority necessary to consummate the sale.

M.  **Free and Clear**. Progressive is the sole and lawful owner of the Debtors' Corporate Headquarters. The sale and assignment of the Debtors' Corporate Headquarters to Purchaser will be, as of the Closing, and upon delivery of a conveyance duly executed by the Trustee, a legal, valid, and effective transfer of the Debtors' Corporate Headquarters, and will vest Purchaser with all right, title, and interest of the Trustee and the Debtors to the Debtors' Corporate Headquarters free and clear of all lien, claims, encumbrances and interests (the "Liens and

Claims"), other than the permitted encumbrances as identified in the Purchase Agreement (the "Permitted Encumbrances") and as specifically set forth herein, with any Liens and Claims excluding the Permitted Encumbrances to attach to the consideration to be received by the Trustee in the same priority and subject to the same defenses and avoidability, if any, as of the Closing. The State of Texas has agreed to discharge any lien filed against the Debtors' Corporate Headquarters, and therefore such lien shall be deemed null, void and of no effect.

N. If the sale to Purchaser by the Trustee was not free and clear of all Liens and Claims (other than the Permitted Encumbrances) as set forth in the Purchase Agreement and this Order, or if Purchaser would, or in the future could, be liable for any Liens and Claims (other than the Permitted Encumbrances), Purchaser would not have entered into the Purchase Agreement and would not consummate the sale or any other transaction contemplated by the Purchase Agreement. A sale of the Debtors' Corporate Headquarters other than one free and clear of all Liens and Claims (other than the Permitted Encumbrances) would adversely impact the Debtors' estates, would yield substantially less value for the Debtors' estates and would result in less certainty than the sale. Therefore, the sale contemplated by the Purchase Agreement is in the best interests of the Debtors' estates and all other parties in interest.

O. **Satisfaction of Section 363(f) Standards**. The Trustee may sell the Debtors' Corporate Headquarters free and clear of all Liens and Claims of any kind or nature whatsoever (other than the Permitted Encumbrances) because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Any party with interests in the Debtors' Corporate Headquarters who did not object, or who withdrew its objections, to the sale or the Motion is deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those parties with interests in the Debtors' Corporate Headquarters who did object fall

within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their interests, if any, attach to the cash proceeds of the sale of the Debtors' Corporate Headquarters against or in which they claim an interest.

P.  **No Fraudulent Transfer**.  The sale does not have the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.  Neither the Trustee nor Purchaser is or will be entering into the sale transactions fraudulently.

Q.  The consideration provided by Purchaser pursuant to the Purchase Agreement constitutes reasonably equivalent value and fair consideration (as those terms are defined in the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code).  The Purchase Agreement represents a fair and reasonable offer to purchase the Debtors' Corporate Headquarters and assume or acquire liabilities under the circumstances of the Debtors' cases.  Approval of the Purchase Agreement and the consummation of the sale are in the best interests of the Debtors' estates and all other parties in interests.

R.  **Excluded Assets**.  The sale of the Debtors' Corporate Headquarters shall specifically exclude (and as used herein the term "Debtors' Corporate Headquarters" shall expressly exclude): (i) all cash, work-in-progress, tax returns, refunds, and receivables as of the Closing Date (as defined herein) of the Debtors, including accounts receivable from customers, receivables from employees or intercompany receivables, notes receivable and insurance proceeds receivable; (ii) all insurance policies of the Debtors and the proceeds therefrom; (iii) records which relate to other assets of the Debtors not sold under the Purchase Agreement or to liabilities or contracts retained by the Debtors; (iv) all organizational, tax and accounting, or other records of the Debtors that Debtors are required by law to retain; (v) all causes of action and all rights and

claims of the Debtors against former or current officers, directors, employees, members, interest holders, principles, agent, lenders, lien holders, representatives of the Debtors and any party asserting rights, suits, claims, causes of action, judgments, damages, rights to payment and litigation rights of any kind or nature whatsoever (whether arising in contracts, tort or otherwise, or any equitable remedy for breach of performance), whether or not such breach gives rise to a right to payment; (vi) all causes of action belonging to the Trustee under Chapter 5 of the Bankruptcy Code; (vii) any amounts which may be determined to be due and owing by any creditor of the Debtors' estates arising prior to the Closing Date; (viii) patents, trademarks or copyrights or other owned or licensed intellectual property owned by the Debtors not related to the service or operation of the land, improvements and/or the Property (as defined in the Purchase Agreement); (ix) all of the oil, gas, hydrocarbons and other minerals which may be located on, in, under or produced from the Property; and (x) all of the Excluded Personal Property (as defined in the Purchase Agreement).

S. **Assumption and Assignment is in the Best Interests of Debtors' Estates**. The assumption and assignment of the Assumed Contract pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors' estates and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Trustee. Accordingly, such assumption and assignment is reasonable, enhances the value of the Debtors' estates and does not constitute unfair discrimination.

T. **Cure/Adequate Assurance**. The Trustee has provided adequate assurance of cure of any default existing prior to the Closing under the Assumed Contract, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and provided adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date

hereof under the Assumed Contract within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. Purchaser has provided adequate assurance of its future performance of and under the Assumed Contract, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code. The non-Debtor parties to the Assumed Contract was given notice and sufficient opportunity to object to the Cure Notice and are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

U.    **Compliance with the Bankruptcy Code**. The consummation of the sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation sections 105(a), 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been or will be complied with in respect of the sale as of the Closing or the effective date of assignment.

V.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the sale.

W.    The Sale Hearing was fair and open to all parties potentially affected by the relief requested in the Motion.

X.    Time is of the essence in closing the sale, and therefore the Trustee and Purchaser intend to close the sale as soon as practicable.

Y.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004 and 6006, the parties may consummate the sale immediately upon entry of this Order. To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUSTED AND DECREED THAT:**

1. **Relief Granted**. The Motion is granted and approved in all respects (other than with respect to matters already addressed by the Bidding Procedures Order), and the sale and other transactions contemplated by the Purchase Agreement are approved in all respects.

2. **Objections Overruled**. All objections to the Motion or the sale, that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

3. **Notice**. Notice of the Motion, including without limitation, notice of the transactions set forth in the Purchase Agreement and the assumption and assignment of the Assumed Contract, the potential Auction, the Sale Hearing, and the sale was fair and equitable under the circumstances and complied in all respects with sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and 9014 and Local Rule 6004-1, and any order entered by the Court with regard to notice and service procedures.

4. **Prior Findings of Fact and Conclusions of Law**. The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of all previous hearings on the Motion, are incorporated herein by reference.

5. **Order and Purchase Agreement Binding on All Parties in Interest**. This Order and the Purchase Agreement shall be binding in all respects upon all creditors and other stakeholders (whether known or unknown) of the Debtors' estates, the Trustee, Purchaser, and all successors and assigns of Purchaser, and shall not be subject to rejection.

6. **Approval**. Pursuant to section § 363(b) of the Bankruptcy Code, the Trustee together with Purchaser are authorized to fully perform under, consummate, and implement the terms of the Purchase Agreement, together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms

ME1 16687695v.9

of the Purchase Agreement, this Order, and the sale of the Debtors' Corporate Headquarters, without any further corporate action or orders of this Court. Purchaser is hereby approved as the successful bidder for the Debtors' Corporate Headquarters having submitted the highest and best offer in the amount of $3.3 Million (the "Sale Proceeds").

7. **Payment of Proceeds**. Upon Closing, without further order of the Court, the Trustee is authorized and directed to promptly make distributions from the Sale Proceeds, after payment of standard and necessary closing costs, including property taxes due and owing to City of Haltom City, Tarrant County and Birdville ISD, Texas through the Closing (the "Texas County Tax Authority") (but not including any taxes in respect of the Alleged Texas Lien, as defined below), to the following parties in the following order of priority: (i) DCP, in an amount equal to the portion of the post-petition financing provided by DCP to the Trustee and used by the Trustee for DCP Property Costs (as defined in this Court's Order entered October 28, 2013 [Docket No. 31] authorizing the Trustee to, inter alia, obtain credit and incur debt in the form of post-petition financing (the "Operating Order"); (ii) East West Bank, in an amount equal to the East West Indebtedness secured by its lien on the Headquarters Collateral (as such terms are defined in the Operating Order); (iii) Jardine Capital Corporation, in an amount equal to the Jardine Indebtedness secured by its lien on the Headquarters Collateral (as such terms are defined in the Operating Order); (iv) each of Bradford Commercial Real Estate Services and Transwestern Commercial Services Fort Worth, LLC, a three percent (3%) real estate commission; (v) to McCarter & English, LLP for its legal fees and costs as set forth in the budget approved pursuant to the Operating Order; (vi) to DCP in an amount equal to the outstanding balance of the DCP Loan secured by its lien on the Debtors' Corporate Headquarters; (vii) to DCP in an amount equal to the outstanding balance of the Post-Petition Financing authorized

ME1 16687695v.9

pursuant to the Operating Order; and (x) the balance pursuant to the priorities set forth in the Bankruptcy Code and as previously set forth in court orders.

8. **Good Faith Purchaser.** Purchaser is a good faith buyer of the Debtors' Corporate Headquarters, is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code, and is hereby granted and is entitled to all of the protections provided to a good faith Purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment under the Purchase Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur, any sale, transfer, or assignment shall be governed in all respects by the original provisions of this Order or the Purchase Agreement, as the case may be.

9. **Section 363(n) of the Bankruptcy Code.** The sale approved by this Order and the Trustee's and Purchaser's entry into the Purchase Agreement may not be subject to avoidance or any recovery or damages pursuant to section 363(n) of the Bankruptcy Code.

10. **Valid Transfer.** Effective as of the Closing (a) the sale and assignment of the Debtors' Corporate Headquarters and the Assumed Contract by the Trustee to Purchaser, evidenced by a conveyance duly executed by the Trustee, shall constitute a legal, valid, and effective transfer of the Debtors' Corporate Headquarters and the Assumed Contract notwithstanding any requirement for approval or consent by any person and vests Purchaser with all right, title and interest of the Debtors in and to the Debtors' Corporate Headquarters, free and clear of all Liens and Claims, pursuant to section 363(f) of the Bankruptcy Code, and (b) the

12

assumption of any Permitted Encumbrances by Purchaser constitutes a legal, valid, and effective delegation of any Permitted Encumbrances to Purchaser and divests the Trustee of all liability with respect to the Permitted Encumbrances.

11. **Free and Clear**. Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Trustee shall be, and hereby is, authorized, empowered, and directed to sell and assign the Debtors' Corporate Headquarters and the Assumed Contract to Purchaser free and clear of all Liens and Claims of any kind whatsoever (other than the Permitted Encumbrances) and as specifically set forth herein with all such interests to attach to the net proceeds of the sale in the order of their priority (subject to the Trustee's obligation to distribute such proceeds as specified in paragraph 7 above), with the same validity, force and effect which they now have as against the Debtors' Corporate Headquarters. The Motion shall be deemed to provide sufficient notice as to the sale and assignment of the Debtors' Corporate Headquarters and Assumed Contract free and clear of all Liens and Claims in accordance with Local Rule 6004-1. Following the Closing, no holder of any Lien or Claim on or against the Trustee, the Debtors, or the Debtors' Corporate Headquarters may interfere with Purchaser use and enjoyment of the Debtors' Corporate Headquarters based on or related to such Lien or Claim, or any actions that the Trustee may take in this bankruptcy case, and no interested party may take any action to prevent, interfere with, or otherwise enjoin consummation of the sale. The State of Texas has agreed to and shall discharge any lien filed against the Debtors' Corporate Headquarters (the "Alleged Texas Lien"), and therefore such lien shall be deemed null, void and of no effect. The Purchaser shall take the Property subject to any existing liens of the Texas County Tax Authority for 2014 taxes.

12. The provisions of this Order authorizing the sale and assignment of the Debtors'

ME1 16687695v.9

Corporate Headquarters free and clear of Liens and Claims (other than the Permitted Encumbrances) and the distribution of the proceeds thereof in accordance with paragraph 7 above, shall be self-executing, and neither the Trustee nor Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.

13. **Direction to Government Agencies**. Each and every federal, state and local governmental agency, unit, or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Order, the Purchase Agreement, and any ancillary documents.

14. **Licenses and Permits**. To the greatest extent available under applicable law, Purchaser shall be authorized, as of the Closing, to operate under any license, permit, registration, and any other governmental authorization or approval of the Debtors with respect to the Debtors' Corporate Headquarters and the Assumed Contract, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to Purchaser as of the Closing;

15. **Fair Consideration**. The sale of the Debtors' Corporate Headquarters and the consideration provided by Purchaser under the Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

16. **Injunction**. Except as otherwise provided in the Purchase Agreement, all persons and entities, including, but not limited to, the Trustee, the Debtors, the Debtors' current and former employees, all debt security holders, administrative agencies, governmental tax and regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract

ME1 16687695v.9

parties, bidders, lessors, warehousemen, customs brokers, freight forwarders, carriers, and other parties in possession of any of the Debtors' Corporate Headquarters at any time, trade creditors, and all other creditors, holding Liens and Claims of any kind or nature whatsoever against or in the Debtors or in the Debtors' interest in the Debtors' Corporate Headquarters (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Trustee, the Debtors' Corporate Headquarters, the Assumed Contract, the operation of the Debtors' business before the Closing Date, the sale, or the transfer of the Debtors' Corporate Headquarters and the Assumed Contract to Purchaser, shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim, or other proceeding of any kind, directly or indirectly, against Purchaser, their property, or the Debtors' Corporate Headquarters. Following the Closing Date, no holder of a Lien or Claim on or against the Debtors or the Debtors' Corporate Headquarters shall interfere with Purchaser's title to or use and enjoyment of the Debtors' Corporate Headquarters based on or related to such Lien or Claim, or any actions that the Trustee may take in the Debtors' bankruptcy cases.

17. Purchaser has not acquired any of the Excluded Assets described in Section 1.02 of the Purchase Agreement or the Excluded Personal Property as defined in the Purchase Agreement. Consequently, all persons, Governmental Units (as defined in section 101(27) of the Bankruptcy Code) and all holders of Liens and Claims, based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against Purchaser or the Debtors' Corporate Headquarters, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Liens and Claims or on account of any liabilities of the

parties, bidders, lessors, warehousemen, customs brokers, freight forwarders, carriers, and other parties in possession of any of the Debtors' Corporate Headquarters at any time, trade creditors, and all other creditors, holding Liens and Claims of any kind or nature whatsoever against or in the Debtors or in the Debtors' interest in the Debtors' Corporate Headquarters (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Trustee, the Debtors' Corporate Headquarters, the Assumed Contract, the operation of the Debtors' business before the Closing Date, the sale, or the transfer of the Debtors' Corporate Headquarters and the Assumed Contract to Purchaser, shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim, or other proceeding of any kind, directly or indirectly, against Purchaser, their property, or the Debtors' Corporate Headquarters. Following the Closing Date, no holder of a Lien or Claim on or against the Debtors or the Debtors' Corporate Headquarters shall interfere with Purchaser's title to or use and enjoyment of the Debtors' Corporate Headquarters based on or related to such Lien or Claim, or any actions that the Trustee may take in the Debtors' bankruptcy cases.

17. Purchaser has not acquired any of the Excluded Assets described in Section 1.02 of the Purchase Agreement or the Excluded Personal Property as defined in the Purchase Agreement. Consequently, all persons, Governmental Units (as defined in section 101(27) of the Bankruptcy Code) and all holders of Liens and Claims, based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against Purchaser or the Debtors' Corporate Headquarters, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Liens and Claims or on account of any liabilities of the

Debtors other than the Permitted Encumbrances pursuant to the Purchase Agreement. All persons holding or asserting any Lien or Claim on the Excluded Assets are hereby enjoined from asserting or prosecuting such Lien or Claim against Purchaser or the Debtors' Corporate Headquarters for any liability associated with the Excluded Assets.

18. **No Bulk Sales**. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the sale.

19. **Assumption and Assignment of Assumed Contract**. Purchaser has satisfied all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance of the Assumed Contract. The assumption by the Trustee of the Assumed Contract and the transfer, sale and assignment of such agreements to Purchaser, as provided for or contemplated by the Purchase Agreement, shall be, and hereby is, authorized and approved subject to the occurrence of the Closing under the Purchase Agreement (with such assumption of liabilities arising after the Closing constituting a portion of the purchase price paid by Purchaser for the Debtors' Corporate Headquarters), and the Assumed Contract shall be deemed valid and binding and in full force and effect and assumed by the Trustee and sold and assigned to Purchaser, pursuant to sections 363 and 365 of the Bankruptcy Code, subject to and under the Purchase Agreement, in each case free and clear of all Liens and Claims other than Cure Amount. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract. The Trustee shall cooperate with, and take all actions reasonably requested by Purchaser to effectuate the foregoing. Any party to an executory contract or unexpired lease that was not assumed by the Trustee and assigned to Purchaser shall remove any equipment from the Debtors' premises at its sole cost and expense at a date and time acceptable to Purchaser.

ME1 16687695v.9

20. All defaults or other obligations under the Assumed Contract arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment by Purchaser of the Cure Amount in the amounts set forth in the notice served by the Trustee on the Counterparty to the Assumed Contract, except to the extent that a Cure Amount was amended on the record at the Sale Hearing. The Cure Amount is hereby fixed at the amounts set forth in the notice served by the Trustee, or the amounts set forth on the record at the Sale Hearing, as the case may be, and the Counterparties to the Assumed Contract are forever bound by such Cure Amount.

21. Each Counterparty to an Assumed Contract shall, as of the Closing, be forever barred and enjoined from asserting against Purchaser, any of the Debtors' Corporate Headquarters, the Debtors, or the Debtors' bankruptcy estates: (a) any default existing as of the date hereof if such default was not raised or asserted in a timely manner prior to the entry of this Order; or (b) any objection to the assumption, sale and assignment of such Counterparty's Assumed Contract. The sale and assignment of the Assumed Contract to Purchaser will not cause a default or otherwise allow the Counterparty thereto to terminate or adversely affect the Trustee's or Purchaser's rights thereunder. Any provisions in the Assumed Contract that purports to prohibit or condition the assignment of such Assumed Contract or allow the Counterparty to such Assumed Contract to terminate, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions, and are void and of no force and effect for purposes of the sale.

22. **Amendments**. Subject to the terms of the Purchase Agreement, the Trustee and

the Purchaser may make non-material modifications to the Purchase Agreement and any related agreements necessary to consummate the Closing. .

23. **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the Purchase Agreement or any ancillary documents in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement and any ancillary documents be authorized and approved in their entirety.

24. **Binding Order**. This Order (a) shall be effective as a determination that, upon the Closing of the sale, all Liens and Claims of any kind or nature whatsoever existing as to the Debtors' Corporate Headquarters being sold by the Trustee prior to the Closing of the sale have been unconditionally released, discharged, and terminated, other than the Permitted Encumbrances, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons and entities including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Debtors' Corporate Headquarters. Upon consummation of the transactions set forth in the Purchase Agreement, Purchaser shall be authorized to file termination statements or lien terminations in any jurisdiction to remove any record, notice filing or financing statement recorded to attach, perfect or otherwise notice any lien or encumbrances that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code except any Permitted Encumbrances. To the extent of any inconsistency

ME1 16687695v.9

between the provisions of the Purchase Agreement (or any documents executed in connection therewith) and this Order, the provisions contained in this Order shall govern.

25. **No Stay of Order.** Notwithstanding Bankruptcy Rules 6004, 6006(d), 7062 or 9014, if applicable, or any other Local Rule or otherwise, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry pursuant to Bankruptcy Rule 6004(h). Time is of the essence in approving the sale and the parties intend to close the transaction within ten (10) days of entry of this Order.

26. **Lifting of Automatic Stay.** The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Trustee to the extent necessary, without further order of the Court, to allow Purchaser to deliver any notice provided for in the Purchase Agreement and allow Purchaser to take any and all actions permitted under the Purchase Agreement in accordance with the terms and conditions thereof.

27. **Retention of Jurisdiction.** The Court shall retain exclusive jurisdiction to (i) interpret, construe and enforce the provisions of this Order, the Bidding Procedures Order, the Purchase Agreement, any ancillary documents, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, (ii) hear and determine any and all disputes arising under or related to this Order, the Bidding Procedures Order, the Purchase Agreement, any ancillary documents, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, except as otherwise provided therein, (iii) enforce the injunctions set forth herein in favor of Purchaser or any of its respective successors and assigns, each of which injunction shall act to bar any claim enjoined and as a complete defense to any such claim or action, and (iv) compel transfer and delivery of any of the Debtors' Corporate Headquarters to

ME1 16687695v.9

Purchaser.

28. **Further Assurances**. From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further and other actions as such other party may reasonably deem necessary or desirable to consummate the sale, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in Purchaser its right, title, and interest in and to the Debtors' Corporate Headquarters and the Assumed Contract.

Dated: _Jan. 6_, 2014
Wilmington, DE

_____
THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE