## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | : Chapter 7 |
| TELETOUCH COMMUNICATIONS, | : |
| INC., <u>et al.</u>, | : Case No. 13-12620 (MFW) |
| | : Jointly Administered |
| Debtors. | : |
| | : **Hearing Date: May 21, 2014 @ 2:00 p.m.** |
| | : **Objection Deadline: April 28, 2014 @ 4:00 p.m.** |

**MOTION OF CHAPTER 7 TRUSTEE PURSUANT TO BANKRUPTCY CODE
SECTIONS 105, 363 AND 365, AND RULES 2002, 6004, 6006 AND 9014 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR (I) AN ORDER
(A) APPROVING THE CREDIT BID RELATING TO THE SALE OF THE MINERAL
INTERESTS AND RIGHTS OF PROGRESSIVE CONCEPTS, INC. IN THAT CERTAIN
PAID UP OIL AND GAS LEASE, SUBJECT TO HIGHER AND BETTER OFFERS,
FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES;
(B) APPROVING THE NOTICE AND SALE PROCEDURES RELATED THERETO;
(C) APPROVING THE CURE PROCEDURES AND THE FORM AND MANNER OF
NOTICE THEREOF RELATED TO THE ASSUMPTION AND ASSIGNMENT OF
THAT CERTAIN PAID UP OIL AND GAS LEASE; AND
(D) SETTING AUCTION AND HEARING DATES; AND (II) AN ORDER
(A) APPROVING THE SALE, AND (B) GRANTING RELATED RELIEF**

Charles A. Stanziale, Jr., in his capacity as the duly appointed, qualified and serving

Chapter 7 Trustee (the "<u>Trustee</u>") of Teletouch Communications, Inc. ("<u>TeleTouch</u>") and

Progressive Concepts, Inc. ("<u>Progressive</u>" and collectively with TeleTouch, the "<u>Debtors</u>"),

through his undersigned counsel, by way of this motion (the "<u>Motion</u>"), seeks entry of an order

pursuant to sections 105, 363 and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101-

1330 (the "<u>Bankruptcy Code</u>"), and Rules 6004, 6006 and 9014 of the *Federal Rules of*

*Bankruptcy Procedure* (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1 and 6004-1 of the *Local*

*Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the*

*District of Delaware* (respectively, "<u>Local Rule 2001-1</u>" and "<u>Local Rule 6004-1</u>"), for entry of

(i) an order (a) approving a sale via a credit bid (the "<u>Credit Bid</u>") of those mineral rights and

interests (the "Leasehold Interests") of Progressive Concepts, Inc. ("Progressive") in that certain *Paid Up Oil and Gas Lease*[1] (the "Lease"), subject to higher and better offers, free and clear of liens, claims, encumbrances and interests; (b) approving the notice and sale procedures related thereto; (c) approving the cure procedures and the form and manner of notice thereof relating to the assumption and assignment of the Lease; and (d) setting auction and hearing dates; and (ii) an order (a) approving the sale of the mineral rights; and (b) granting related relief.  In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested herein are sections 105(a), 363(b), (f), (m) and (n) and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rule 2001-1 and Local Rule 6004-1 (or collectively, the "Local Rules").

## INTRODUCTION

2.      After a careful investigation into the Debtors' assets and completing the sale of the corporate headquarters owned by Progressive, the Trustee brings this Motion in an effort to maximize the value of the Progressive's Leasehold Interests for the benefit of all creditors.

## SUMMARY OF RELIEF REQUESTED

3.      This Motion seeks relief in two stages and the entry of two orders related to the sale of the Leasehold Interests.  First, the Trustee hereby requests an initial hearing on the Motion (the "Preliminary Hearing") for the Court to consider entry of an order substantially in

---

[1]  The Lease is annexed hereto as **Exhibit A**.  As described herein, the Trustee reserves the right to withdraw the Leasehold Interests from the Auction.

the form attached hereto as **Exhibit B** (the "<u>Bidding Procedures Order</u>"): (i) approving the Credit Bid made by the Debtors' lender DCP Teletouch Lender, LLC ("<u>DCP</u>"); (ii) establishing and approving the form and notice of the bidding, auction and sale procedures with respect to the sale free and clear of liens, claims, encumbrances and interests; (iii) approving the cure procedures and the form and manner of notice thereof relating to the assumption and assignment of the lease; and (iv) setting auction and hearing dates to consider higher and better offers, if any. Second, the Trustee shall seek an order to approve the sale to the Successful Bidder (defined herein) at a separate hearing (the "<u>Sale Approval Hearing</u>").

4.    The Trustee will also seek an order (the "<u>Sale Approval Order</u>") substantially in the form attached hereto as **Exhibit C**, which will (i) approve the sale of the Leasehold Interests and the assignment of the Lease, if applicable, on the terms and conditions agreed to between the Trustee and the Successful Bidder (defined herein) authorizing the Trustee to (i) proceed with the transaction to the Successful Bidder; (ii) include a specific finding pursuant to section 363(m) of the Bankruptcy Code that the purchaser is a good faith buyer; (iii) required that pursuant to section 363(f) of the Bankruptcy Code, the sale shall be on an "AS IS" "WHERE IS" basis and free and clear of all liens, claims, encumbrances and interests whatsoever, with such liens, claims, encumbrances and interests attaching to the net proceeds of the sale; and (iv) consummate the sale and to arrange for the mutual execution of all necessary documents, agreements and assignments in conjunction therewith.

ME1 17474633v.3

## BACKGROUND

**A.     General**

5.     On October 3, 2013 (the "Petition Date"), the Debtors filed their respective voluntary petitions for relief under Chapter 7 of Title 11 of the Bankruptcy Code in the Bankruptcy Court.

6.     On October 3, 2013, the Office of the United States Trustee for the District of Delaware appointed Charles A. Stanziale, Jr. as the Chapter 7 Trustee for the Debtors.

7.     On October 14, 2013, the Trustee filed a motion to jointly administer the estates of the Debtors.

8.     On November 12, 2013, an *Order Directing Joint Administration of the Debtors' Cases Pursuant to Federal Rule of Bankruptcy Procedure 1015(b)* (the "Joint Administration Order") [Docket No. 46][2] was entered.

9.     Since the Petition Date, the Trustee aggressively marketed various assets of the Debtors including a sale of the corporate headquarters (the "Corporate Headquarters") owned by Progressive (the "Corporate Headquarters Sale").  The Trustee successfully negotiated an asset Credit Bid with a third party purchaser, and on January 6, 2014, after notice and hearing on the Trustee's *Emergency Motion Pursuant To Bankruptcy Code Sections 105, 363, 365 And Rules 2002, 6004, 6006 And 9014 Of The Federal Rules Of Bankruptcy Procedures For (I) An Order (A) Approving The Stalking Horse Leasehold Interests Credit Bid And Break-Up Fee Relating To The Sale of the Debtors' Corporate Headquarters, Subject To Higher And Better Offers, Free And Clear Of Liens, Claims, Encumbrances And Interests; (B) Approving The Notice And Sale Procedures Related Thereto; (C) Approving The Cure Procedures And The Form And Manner*

---

[2]  The Joint Administration Order was also entered in the Progressive Concepts, Inc. bankruptcy case as Docket No. 53.

*Of Notice Thereof; And (D) Setting Auction And Hearing Dates; And (II) An Order (A) Approving The Sale, And (B) Granting Related Relief*, the Court entered an order approving the Corporate Headquarters Sale.

**B.      Debtors' Pre-Petition Business**

10.      Prior to the Petition Date, Teletouch had offered a comprehensive suite of telecommunications products and services, including cellular, two-way radio, GPS-telemetry, wireless messaging and public safety equipment.

11.      Progressive is the primary operating business of Teletouch and is a wholly-owned subsidiary of Teletouch.  Progressive operated a national distribution business serving national cellular carrier agents as well as auto dealers and consumer electronics retailers with product sales and support.

12.      Upon information and belief, certain efforts were made prior to the Petition Date in an attempt to reorganize the Debtors.

**C.      The Debtors' Debt Structure**

13.      On May 3, 2007, Progressive entered into a *Deed of Trust and Security Agreement* with United Commercial Bank, predecessor to East West Bank, as may have been amended from time to time, which secured a promissory note of Progressive in the principal amount of $2,850,000 (the "East West Loan").  The East West Loan was secured by a first lien on the Corporate Headquarters.  At the closing of the Corporate Headquarters Sale, the East West Loan was paid in full.

14.      Effective May 3, 2007, the Debtors entered into a loan agreement, as may have been amended from time to time, with Jardine Capital Corporation ("Jardine") to refinance previous debt in the amount of $650,000 (the "Jardine Loan").  The Jardine Loan was secured by

a second lien on the Corporate Headquarters.  At the closing of the Corporate Headquarters Sale, the Jardine Loan was paid in full.

15.      On April 30, 2008, the Debtors executed a Loan and Security Agreement (as amended from time to time, the "Thermo Loan Agreement") with Thermo Credit, LLC ("Thermo"), to secure a revolving credit facility in a maximum amount of up to $5,000,000, which debt was evidenced several notes executed by the Debtors and payable to Thermo, and secured by liens on all or substantially all of the prepetition assets of the Debtors.  Upon information and belief, as of August 11, 2013, the Debtors were indebted to Thermo in the amount of $2,873,287.75 under the Thermo Loan Agreement and the loan documents related thereto.

16.      On February 8, 2013, Teletouch and Progressive entered into a Loan and Security Agreement (as amended from time to time, the "DCP Loan Agreement") with DCP, which provided Teletouch and Progressive with (i) a revolving credit facility in a maximum amount of $6.0 Million; and (ii) a maximum of up to $2.0 Million pursuant to a standby term loan.

17.      The DCP Loan Agreement and certain related loan documents granted DCP liens and security interests on all existing and after-acquired assets of the Debtors, specifically including, without limitation the following: all property or other assets now existing or hereafter acquired, real or personal, tangible or intangible, and whether owned by, consigned to, or held by, or under the care, custody or control of the Debtors, including all money, cash, cash equivalents, accounts, deposit accounts and deposits, investment property, inventory, equipment, fixtures, goods, chattel paper, electronic chattel paper, tangible chattel paper, documents, instruments, letters of credit, letter of credit rights, supporting obligations, commercial tort claims, books and records, real property interests, leasehold estates in real property of a debtor,

as lessee, general intangibles (including all Leasehold Interests, payment intangibles, contract rights, choses in action, and software), and all of Debtors' other interests in property of every kind and description, and the products, profits, rents of, dividends or distributions on, accessions to, and all proceeds (including tort claims, insurance claims and insurance proceeds) of any of the foregoing, and all rights and remedies applicable to such property; and further including, without limitation, all rights of the Debtors to proceeds arising under agreements with AT&T, including, without limitation, upon the exercise by Progressive of the AT&T transfer right and/or upon the termination or expiration of the AT&T agreements.  Pursuant to the DCP Loan Agreement and certain related loan documents, DCP holds (i) first priority liens and security interests on all tangible and intangible assets of the Debtors; (ii) a third mortgage lien on the Corporate Headquarters; (iii) a second mortgage lien on the Debtors' property located at 2121 Old Henderson Highway, Smith County, Tyler, Texas; and (iv) liens on the Debtors' deposit accounts pursuant to certain account control agreements executed by the Debtors and their depository banks.  Pursuant to the Financing Order (defined herein), other than the post-petition financing advanced by DCP, the Trustee had forty-five days from the date of entry of the Financing Order  (the "Challenge Period") to challenge the extent, validity and priority of the prepetition DCP security documents, instruments, and/or liens (the "Lien Challenge").   The Challenge Period has expired.

18.    On February 8, 2013, Thermo and DCP also entered into that certain *Subordination and Intercreditor Agreement* (the "Subordination Agreement") wherein Thermo agreed to subordinate the indebtedness and security interests of the Debtors to Thermo under the Thermo Loan Agreement and related loan documents to the indebtedness and security interests of the Debtors to DCP Loan Agreement and related loan documents.   As a result of the

-10-

Subordination Agreement, Thermo's secured claims and liens are subordinate to DCP's secured claims and liens.

19.     Upon information and belief, as of the Petition Date, the Debtors were indebted to DCP under the DCP Loan Agreement in the approximate amount of $1,312,316.31 (the "DCP Indebtedness").  To date the DCP Indebtedness has not been satisfied in full.

20.     On October 28, 2013, after notice and hearing, an order was entered allowing, *inter alia*, the Trustee to conduct limited operations of the Debtors and obtain credit and incur debt in the form of the post-petition financing from DCP with certain adequate protection and replacement liens afforded to DCP (the "Financing Order") [Docket No. 31][3].

**D.     The Lease**

21.     On May 1, 2008, Progressive, as lessor ("Lessor") entered into the Lease with Chesapeake Exploration, LLC ("Lessee").  The Lease provides for, among other things, the granting of exploration, development, production and marketing rights with regard to, among other things, oil and gas with all hydrocarbon and non-hydrocarbon substances produced in association therewith on or within 12.923 acres in Tarrant County, Texas and the payment of royalties therefrom.

**E.     Sale of the Leasehold Interests**

22.     The Trustee has decided, after soliciting cash bids and reviewing the Leasehold Interests, to accept DCP's Credit Bid for the sale of the Leasehold Interests, which shall be subject to higher and better offers.

23.     With respect to the Trustee's consent to the Credit Bid, the Credit Bid was negotiated at arm's-length, without collusion or fraud, in good faith and all of the terms of the

---

[3]  The Financing Order was also entered in the Progressive Concepts, Inc. bankruptcy case as Docket No. 36.

Credit Bid have been disclosed.  DCP and the Trustee are not related in any way and DCP and the Debtors do not share corporate officers or directors.  The terms of the Credit Bid do not personally benefit the Trustee.  These negotiations have involved substantial time and energy by the parties and their professionals.  Accordingly, the Trustee requests that the Court determine that DCP has acted in good faith, has bought for value and is entitled to the protections of a good faith purchaser provided by section 363(m) of the Bankruptcy Code.  *See In re United Press Int'l, Inc.*, Case No. 91-B-13955, 1992 Bankr. LEXIS 842, ** 3, 10 (Bankr. S.D.N.Y. May 18, 1992).

24.     The Leasehold Interests, and proceeds therefrom, are property of the estate and the Trustee, in his business judgment, believes sale of the Leasehold Interests and the assignment of the Lease is in the best interest of the Debtors' estates and their creditors.

25.     The Trustee, in the exercise of his business judgment, has determined that the Credit Bid presented by the Credit Bidder and the assignment of the Lease represents the highest and best offer for the Leasehold Interests.  The Credit Bidder has, among other things, agreed to purchase the Leasehold Interests and obtain an assignment of the Lease, free and clear of any liens, claims and interests pursuant to a credit bid of $200,000 which will be used to offset its lien on the remaining portion of its secured lien.

26.     In addition, the Credit Bidder has agreed with the Trustee, among other provisions, to carve-out the amount of $2,500 of its cash collateral (the "Carve-Out") to be used as a dividend to general unsecured creditors with allowed claims in the Debtors' estates in consideration for serving as the Credit Bidder.

27.     No break-up fee shall be required.  The Trustee submits that the approval of this Motion and the relief requested herein will allow the estates and the creditors to maximize the

value of the Leasehold Interests and the Lease, for the benefit of the Debtors' estates and creditors.

28.     Finally, the sale of the Leasehold Interests and the assignment of the Lease will assist the Trustee in his efforts to limit administrative costs.

29.     The Trustee (or the "Seller") proposes to sell the Leasehold Interests to the Credit Bidder, subject to higher or better offers.  The proposed sale will be on an "as is," "where is," basis.

**Disclosures Under Local Rule 6004-1(b)(iv)**

30.     Pursuant to Local Rule 6004-1(b)(iv), the Trustee sets forth the following disclosures relating to the proposed sale to DCP:

- **Sale to an Insider**:  The sale is not to an insider. Credit Bidder's status as a lender to the Debtors has been disclosed herein.

- **Agreements with Management**:  No agreements with management have been entered into in connection with the sale.

- **Private Sale/No Competitive Bidding**:  The sale is being conducted pursuant to the competitive bidding process detailed in the Motion.

- **Closing and Other Deadlines**:  The consummation of the transaction contemplated by the Credit Bid, unless otherwise agreed to by the parties, and satisfaction or waiver of each of the other conditions to Closing (other than the conditions with respect to action the parties will take at the Closing itself) shall take place at a closing (the "Closing") to be held at the offices of the Trustee (McCarter & English, Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102) (or at such other place as the parties may designate in writing) within fifteen (15) days of entry of the Sale Approval Order, which Order is not subject to reconsideration, stay or appeal and no injunction prohibiting the Closing has been entered by a court or administrative agency, unless another time or date, or both, are agreed to in writing by the parties.

- **Purchase Price**:  The purchase price offered by the Credit Bidder is $200,000 (the "Purchase Price"), subject to higher or better offers as more fully described in the Motion together with a cash payment of $2,500.

- **Interim** Arrangements with Proposed Buyer: The Trustee has not entered into any interim arrangements with the Credit Bidder.

- **Sale Free and Clear**: The Trustee is seeking to sell the Leasehold Interests free and clear of liens and other interests pursuant to Section 363(f) of the Bankruptcy Code.

- **Relief from Bankruptcy Rule 6004(h)**: As noted in the Motion, the Trustee is requesting relief from the 14-day stay imposed by Rule 6004(h).

31.     The Credit Bidder, in making this offer, acknowledged and agreed that the sale of the Leasehold Interests is subject to higher and better offers for the Leasehold Interests, and this Court's approval.

**The Proposed Auction Procedures**

32.     In accordance with Bankruptcy Rule 6004(f)(1), the sale of property outside of the ordinary course of business may be by private sale or by public auction. *See* Fed, R. Bankr. P. 6004(f)(1). The sale of the Leasehold Interests by auction (with a reservation of right to withdraw the Leasehold Interests from the Auction or to proceed with a private sale of the Leasehold Interests) will enable the Estates to obtain the highest and best offer for the Leasehold Interests, thus maximizing the value of their estates, and is in the best interests of the Debtors, their creditors, and other parties in interest.

33.     Pursuant to the procedures described below, among other things, within seven (7) days of entry of the Bidding Procedures Order, the Trustee will serve a notice referencing the bid deadline, the auction date and the Sale Approval Hearing (the "Notice of Bid Deadline, Auction, and Sale Hearing") (which is annexed to the Bidding Procedures Order as Exhibit 1) together with a copy of the Bidding Procedures (which is annexed to the Notice of Bid Deadline, Auction and Sale Hearing as Exhibit A on (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for DCP; (iii) counsel for the Debtors; (iv) counsel for Thermo Credit,

-14-

LLC; (v) the Lessee or its counsel; (vi) the Internal Revenue Service; (vii) any party having expressed an interest in the Leasehold Interests during the pendency of the bankruptcy proceedings; (viii) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any of the Leasehold Interests; and (ix) parties who have requested notice in the Debtors' cases pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

34.    This Notice of Bid Deadline, Auction, and Sale Hearing will give the Notice Parties reasonable notice of the Sale Approval Hearing to consider the proposed sale, to have an opportunity to object thereto, or to submit a higher or better offer up to the time of the Bid Deadline.

35.    Pursuant to Rule 2002(l), the Trustee, as soon as reasonably practicable after the entry of the Bidding Procedures Order, proposes to publish a shortened summary version of the Bidding Procedures outlined herein at least once, in a newspaper, website or trade publication of his sole choosing calculated to target audiences with an interest in the subject matter of the Leasehold Interests (the "Publication Notice").  Likewise, the Trustee intends to actively market the Leasehold Interests and advertise the Auction to all persons and entities who previously demonstrated an interest in the Leasehold Interests.

36.    The Trustee submits that the form and manner of the notice proposed herein constitutes good and sufficient notice of the sale of the Leasehold Interests and the Sale Approval Hearing because such notice is reasonably calculated to provide timely and adequate notice to the Debtors' known and unknown creditors, all parties that possess or allege a secured interest in any of the Leasehold Interests, those persons and entities that are likely to have an interest in submitting a competing bid, and to any interested parties who are unknown to the Trustee and the Trustee's professionals.  Therefore, the Trustee submits that no other or further

notice of the Auction, the sale of the Leasehold Interests, and the Sale Approval Hearing need be given.

37.     The marketing program described herein is sufficient to provide adequate notice to interested purchasers of the Leasehold Interests. The Trustee will identify a sufficiently-large number of potential purchasers (each a "Potential Bidder"), comprised of retailers, brokers, and other parties, and will provide information to each Potential Bidder and other parties interested in bidding on the Leasehold Interests.

38.     Any Potential Bidder shall be afforded an opportunity to submit a higher or better offer up to the time of the Bid Deadline defined herein, provided that the Potential Bidder adhere to the following bidding, auction and sale procedures (collectively, the "Bidding Procedures"):

- **Bidding Process**: The Trustee will solicit higher and better offers from third-party bidders (each a "Potential Bidder") for the Leasehold Interests. The Trustee shall have the sole right (i) to determine whether a Potential Bidder is a Qualified Bidder (defined below); (ii) to coordinate the efforts of Qualified Bidders in conducting their respective due diligence reviews; (iii) to receive offers from Qualified Bidders; (iv) to notice all parties with respect to the Bidding and Auction Procedures; and (v) to evaluate and negotiate any offers made to purchase the Leasehold Interests (collectively, the "Bidding Process"). Any person or entity who wishes to participate in the Bidding Process must be deemed a Qualified Bidder by the Trustee. Neither the Trustee nor his professionals shall be obligated to furnish any information of any kind whatsoever to any person or entity that is not a Qualified Bidder.

- **Information Requests**: Any Potential Bidder desiring additional information concerning the Leasehold Interests may request same upon written notice to the Trustee provided, however, that all due diligence must be completed on or before the Bid Deadline as defined herein. The Trustee will designate a representative to coordinate all reasonable requests for additional information from a Potential Bidder. Neither the Trustee nor any of his representatives are obligated to furnish any information to any person other than a Potential Bidder. All information to be provided is for informational purposes only and neither the Trustee nor his professionals make any warranties or representations with regard to same. Each Potential Bidder shall execute a *Confidentiality Agreement* stating that it will not use any confidential information for any purpose other than submitting a bid.

- **Bid Requirements:** In order for a Potential Bidder to participate in the Auction, its bid (unless such requirement is waived by the Trustee) must include the following (the "Bid Requirements"):

  o A cash purchase price in an amount not less than $210,000;

  o A representation that (i) the Potential Bidder agrees to serve as the Back-Up Bidder in the event that its bid is the second highest or otherwise best Qualified Bid; (ii) the Potential Bidder is not an insider of the Debtors or provides a disclosure as to its relationship with the Debtors; and (iii) the Potential Bidder will complete all its due diligence by the Bid Deadline;

  o A letter agreement agreeable in form to the Trustee, subject to substantially the same or more favorable terms and conditions as the Credit Bid and subject to all other terms referenced in the Bidding Procedures, including but not limited to the completion of all due diligence by the Bid Deadline (i) providing for a purchase price in cash of at least $210,000; (ii) excluding any contingencies, conditions precedent or other terms excusing the performance of the Potential Bidder based upon it completing due diligence or obtaining financing for the sale, and including only such representations and warranties as may be approved by the Trustee, which approval shall be granted or denied in Seller's sole and absolute discretion (provided, however, that under no circumstances shall Trustee and/or the Debtors have any liability for any breach of any representation and warranty; the Trustee is selling its right, title and interest in the Leasehold Interests described in the Credit Bid 'AS IS' and any buyer should conduct whatever diligence is necessary to satisfy such Potential Bidder that the representations and warranties are true and correct); (iii) excluding any provision for any break-up fee, termination fee, expense reimbursement, or similar type of payment; and (iv) setting forth that the Potential Bidder will be solely responsible for any broker fee;

  o A good faith deposit that is equal in amount to ten (10%) percent of the minimum cash purchase price provided for herein that must be wired to an account maintained and specified by the Trustee by the Bid Deadline (the "Good Faith Deposit");

  o Provide evidence, in the form of bank or broker statements of the Potential Bidder, the most current audited and latest unaudited financial statements and financial references of the Potential Bidder, or other evidence satisfactory to the Trustee (collectively, the "Financials") that the Potential Bidder is "financially qualified" to proceed to closing on an all-cash basis within seven (7) business days after an entry of the Sale Approval Order; and

      o   The identity of each entity that will be participating in such bid or otherwise participating in connection with the bid, including any proposed designee(s), and the complete terms of such participation.

The Trustee shall have the sole discretion to determine, whether a bid received from a Potential Bidder shall be deemed a Qualified Bid.  A Potential Bidder that satisfies all of the Bid Requirements shall be deemed a "<u>Qualified Bidder</u>" and its bid shall be deemed a "<u>Qualified Bid</u>".

The Trustee reserves the right to determine the value of any Qualified Bid, which Qualified Bid constitutes the highest, best or otherwise financially superior offer and which Qualified Bid constitutes the second highest, best or otherwise financially superior offer.

- **<u>Bid Deadline</u>:**  To be considered a Qualified Bid, a Potential Bidder must deliver a bid that satisfies all of the Bid Requirements, on or before **June 24, 2014, at 1:00 p.m. (prevailing Eastern Time)** (the "<u>Bid Deadline</u>") to: McCarter & English, LLP, counsel to the Trustee, Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102 (attn:  Jeffrey Testa, Esq.).

- **<u>Credit Bidder is a Qualified Bidder/Credit Bid is a Qualified Bid</u>:**  The Credit Bidder is a Qualified Bidder, and the Credit Bid is a Qualified Bid.

- **<u>"As Is, Where Is"</u>**:  The sale of the Leasehold Interests shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Trustee or his representatives except for the express representations contained in the Credit Bid.  Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Leasehold Interests prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Leasehold Interests in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Leasehold Interests, or the completeness of any information provided in connection therewith, or the Auction, except as expressly stated in the Credit Bid.

- **<u>Leasehold Interests to be Sold Free of Any And All Claims</u>**:  Except as otherwise provided in the Credit Bid, all of the Trustee's right, title and interest in and to the Leasehold Interests shall be sold free and clear of all claims, which claims shall attach to the proceeds of the sale (excluding any Assumed Liabilities or permitted encumbrances).

- **<u>Auction</u>**:  If more than one Qualified Bid has been received for the Leasehold Interests (in addition to the Credit Bid), the Trustee shall conduct an open Auction on record.  The Auction shall commence on **June 27, 2014, at 11:00 a.m.**

**(prevailing Eastern Time)** at the offices of McCarter & English, LLP in Newark, New Jersey.  If no Qualified Bid, other than the bid of the Credit Bidder is received by the Trustee prior to the expiration of the Bid Deadline, the Trustee shall not hold an Auction, and shall proceed with the hearing to approve the sale of the Leasehold Interests to the Credit Bidder.  For avoidance of doubt, if no Qualified Bid is received, no party other than the Credit Bidder shall be given an opportunity to present at the Sale Approval Hearing or otherwise, any bid for the Leasehold Interests, and the Seller shall proceed to seek approval to close the sale to the Credit Bidder.  The Auction shall be governed by the following procedures:

- o  Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction.  During the Auction, bidding shall begin initially with the highest Qualified Bid and subsequently continue in minimum increments of at least $5,000.  DCP shall be allowed to increase its Credit Bid (in its sole discretion) up to the amount of the DCP Indebtedness.

- o  Only Qualified Bidders shall be entitled to make any subsequent bids at the Auction and only Qualified Bidders and their respective authorized representatives are entitled to attend and/or participate at the Auction;

- o  Each Qualified Bidder or its/his/her duly authorized representative shall appear in person at the Auction or via telephonic conference;

- o  Each of the Qualified Bidders may make additional modifications to their respective Credit Bids at the Auction, but only to the extent that such modifications do not disqualify the Qualified Bidders;

- o  The Auction will be conducted openly and each Qualified Bidder will be informed of the terms of the previous bids;

- o  Each Qualified Bidder shall confirm at the Auction that it has not engaged in any collusion with respect to the bidding or the proposed sale of the Property; and

- o  The bidding at the Auction will be transcribed.

- o  Upon conclusion of the bidding, the Auction shall be closed, and the Trustee shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the proposed sale of the Leasehold Interests; and (ii) as soon as reasonably practicable thereafter (a) identify, in his sole discretion, the highest, best or otherwise financially superior offer for the Leasehold Interests (the "<u>Successful Bid</u>") and the entity or entities submitting such Successful Bid (the "<u>Successful Bidder</u>"), which

-19-

highest, best or otherwise financially superior offer will provide the greatest amount of net value to the Trustee and the Debtors' creditors; (b) identify, in his sole discretion, the second highest, best or otherwise financially superior offer for the Leasehold Interests (the "<u>Back-Up Bid</u>") and the entity or entities submitting such Back-Up Bid (the "<u>Back-Up Bidder</u>"); and (c) advise the Qualified Bidders of the identities of the Successful Bidder and the Back-Up Bidder. At the conclusion of the Auction, the Successful Bidder and Back-Up Bidder shall be required to notify the Trustee whether each requests that the Trustee assume and assign the Lease.

- o If a third-party bidder is deemed the Successful Bidder and proceeds to closing, then all net proceeds in an amount up to the DCP Indebtedness, exclusive of the Carve-Out, shall be paid to DCP at closing.

- **<u>Acceptance of Qualified Bids</u>**: The Trustee shall sell the Leasehold Interests to the Successful Bidder upon the approval of the Successful Bid by the Court after a hearing (the "<u>Sale Approval Hearing</u>"). The Trustee's presentation of a particular Qualified Bid to the Court for approval does not constitute the Trustee's acceptance of the bid. While the Successful Bid is binding on the Qualified Bidder who submitted such bid, the Trustee will be deemed to have accepted a bid only when the acceptance of the Successful Bid has been approved by the Court at the Sale Approval Hearing. All interested parties reserve their right to object to the Trustee's selection of the Successful Bidder and the Successful Bid.

- **<u>Sale Approval Hearing</u>**: A final hearing to consider approval of the Successful Bidder and sale will take place before the Honorable Mary F. Walrath, Judge, in the Bankruptcy Court, 824 N. Market Street, Courtroom #4, Wilmington, Delaware 19801, **on July 9, 2014, at 2:00 p.m. (prevailing Eastern Time)**, or as such other time thereafter as the Court directs. The Sale Approval Hearing may be adjourned or rescheduled without prior notice. No party will be permitted to bid at the Sale Approval Hearing.

- **<u>Return of Good Faith Deposits</u>**: The Good Faith Deposits shall be held in a segregated account and shall be returned to the depositing party within five (5) business days following the auction, unless: (i) the depositing party makes the Successful Bid and the Successful Bid provides for such party's deposit to be applied to the purchase price; or (ii) the depositing party makes the Successful Bid and fails to proceed to closing of the Sale, in which case the Deposit shall become property of the Debtors' estates.

- **<u>Closing of the Sale</u>**: Closing to occur at a time mutually agreeable to the Trustee and the Successful Bidder, but no later than fifteen (15) days after entry of the Sale Approval Order, unless mutually agreed upon by the Trustee and the Successful Bidder. In the event that the Sale fails to close during such time

-20-

period, then the Seller shall be authorized, but not required, to consummate the Sale with the Back-Up Bidder.

- **Modifications:  The Trustee reserves the right to modify, adjourn, or extend any of the** deadlines established herein.   Notice of any such modification, adjournment, or extension shall be provided only to the Qualified Bidders and the Seller.   The Trustee also reserves the right to modify any of the Bidding Procedures in any manner that, in its judgment, will better promote the goals of the Auction, so long as such modifications are not materially inconsistent with any of the provisions of the Bidding Procedures outlined herein or any Bankruptcy Court order, including the Bidding Procedures Order.

39.     The Trustee submits that the Bidding Procedures are fair and reasonable, and through the vehicle of the Auction, provide the best means of ensuring that the Trustee obtains the highest and best offer for the Leasehold Interests.   As such, the sale of the Leasehold Interests pursuant to the Bidding Procedures will be in the best interests of the Debtors' creditors.

40.     The Bidding Procedures provide that any Qualified Bidder interested in submitting a competing bid shall be afforded reasonable due diligence opportunities prior to the Auction in an effort to compose a competing bid (a "Competing Bid").   Further, the Bidding Procedures contain a time frame that permits a prospective purchaser to review its Competing Bid and, if interested, formulate a revised, increased bid.   Additionally, such a time frame will allow the Trustee to consider and evaluate any Competing Bid to ensure that such a Competing Bid is a Qualified Bid and that the potential bidder satisfies the requirements for participation in the Auction.

41.     In order to participate in the Auction, the Trustee proposes that all interested persons must comply with the Bidding Procedures including the requirement that all written bids be submitted no later than the Bid Deadline to the parties set forth therein.

42.     Bidders are cautioned that, as set forth in the Bidding Procedures, in the event of a failure to consummate a sale of the Leasehold Interests because of a breach or failure on the part

of the Successful Bidder with respect to such Leasehold Interests, the Trustee is requesting authority to retain the Successful Bidder's deposit as liquidated damages, and the next highest or otherwise best Qualified Bidder, as disclosed at the Auction, shall be deemed the successful bidder and shall consummate the sale of the Leasehold Interests without further order of the Court.

43.     Should a Potential Bidder submit an offer that meets the criteria referenced above, the Credit Bidder shall be allowed to Credit Bid up to the full amount of its secured debt at the Auction.

44.     The sale of the Leasehold Interests shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Trustee or his representatives.  All of the Trustee's right, title and interest in and to the Leasehold Interests shall be sold free and clear of all claims, which claims shall attach to the proceeds of the sale.

45.     The Trustee submits that these procedures are fair and reasonable, and provide the best means of ensuring that the Trustee obtains the highest and best offer for the Leasehold Interests.  As such, the sale of the Leasehold Interests pursuant to the procedures referenced above will be in the best interests of the Debtors' creditors.

**Potential Assumption and Assignment of the Lease**

46.     The Successful Bidder may request that the Lease be assumed and assigned (or the Back-Up Bidder in the event the Successful Bidder fails to consummate the Closing).  At the conclusion of the Auction, which shall be on or before ten (10) days prior to the Sale Approval Hearing, the Trustee will serve a cure notice substantially in the form attached the Bidding Procedures Order as Exhibit 2 (the "Cure Notice") upon the Lessee to the Lease, if the Successful Bidder (and the Back-Up Bidder in the event the Successful Bidder fails to

consummate the Closing) requests same be assumed and assigned as part of the proposed sale. The Cure Notice shall identify the amounts, if any, that the Trustee believes is owed to the Lessee in order to cure any defaults that may exist under such contract (the "Cure Amount"). Pursuant to the Bidding Procedures Order, the Cure Notice shall also state the applicable date, time and place of the Sale Approval Hearing, and provide the date and time by which any objection ("Cure Objection") to (i) the assumption and assignment of the Lease on the basis of lack of adequate assurance of future performance under section 365(b)(1) or (ii) the Cure Amount must be filed and served by the Counterparty. If a contract or lease is assumed and assigned under the proposed sale, then unless the Lessee properly and timely files and serves a Cure Objection pursuant to the Cure Notice, the Lessee will receive payment from the Successful Bidder (or the Back-Up Bidder if the Successful Bidder fails to consummate the closing) of the Cure Amount (if any) as set forth in the Cure Notice consistent with the terms and procedures approved by the Court.

47.    At the Sale Approval Hearing, the Trustee shall seek authority to assign the Lease to the Successful Bidder (or the Back-Up Bidder if the Successful Bidder fails to consummate the closing) effective as of the Closing of the proposed sale. The Lessee will be notified of such deletion by written notice via U.S. first-class mail by no later than two (2) business days from such determination.

**BASIS FOR RELIEF AND SALE OF THE LEASE FREE AND CLEAR OF LIENS**

48.    The Trustee submits that ample authority exists for the approval of the sale of the Leasehold Interests to the Successful Bidder and to allow DCP to credit bid. Section 363(b) of the Bankruptcy Code permits a trustee to sell assets outside of the ordinary course of business. Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of

-23-

the estate." 11 U.S.C. § 363(b). Section 105(a) of the Bankruptcy Code further provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In pertinent part, Bankruptcy Rule 6004 states that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1).

49.     Bankruptcy Code §363(b) provides, in pertinent part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate," 11 U.S.C. § 363(b)(1); *see In re Ames Dept. Stores. Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (noting that "going-out-of-business" sales are governed by section 363(b)). In addition, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

50.     The proposed use, sale, or lease of property of the estate may be approved under Bankruptcy Code §363(b) if it is supported by sound business justification. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Committee of Equity Security Holders v. Lionel Corn, fin re Lionel Co.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Delaware & Hudson Rv. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991). Moreover, pursuant to §105, the Court has expansive equitable powers to fashion any order or decree which is in the interest of preserving or protecting the value of the debtor's assets. *See e.g., In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986).

51.     Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration has been provided; (iii) whether the transaction has

been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice has been provided.  *See In re Lionel Corp.*, 722 F.2d at 1071 (setting forth the "sound business purpose" test); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d at 145-47 (implicitly adopting the articulated business justification test of *Lionel* and adding the "good faith" requirement);  *In re Delaware & Hudson Ry. Co.*, 124 BR. at 176 (adopting *Lionel* in this District).  If a sound business justification exists, then a presumption attaches that the decision was informed, in good faith and in the honest belief that the action was in the best interests of the estate.  *Official Comm. of Subordinated Bondholders v. Integrated Resources. Inc. (In re Integrated Resources, Inc.)*, 147 BR 650, 656 (S.D.N.Y, 1992).  The proposed sale meets each of these requirements.

52.     The Trustee further requests authority to sell the Leasehold Interests free and clear of any and all liens, claims and encumbrances that may be asserted.  Bankruptcy Code §363(f) permits a debtor to sell property free and clear of third-party interests only if (i) applicable nonbankruptcy law permits it; (ii) the third party consents; (iii) the interest is a lien and the purchase price is greater than the aggregate value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the third party could be legally or equitably compelled to accept a money satisfaction of that interest.  Since Bankruptcy Code §363(f) is written in the disjunctive, any of the five conditions, including the "consent" of the lienholders, provides authority to sell free and clear of liens.  *See Citicorp Homeowners Services. Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D.Pa. 1988) (sale "free and clear" may be approved provided the requirements of at least one subsection are met); *see also In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, * 12 (Bankr. S.D.N.Y. Mar. 6, 1992) (a "sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

ME1 17474633v.3

53.     There are compelling reasons and sound business justifications for the Court to authorize the sale of the Leasehold Interests as proposed herein.  The Leasehold Interests will be marketed by the Trustee to numerous potential purchasers in an attempt to capture the greatest possible value to the estates.  Further, the Trustee, in consultation with the Committee and their prepetition secured lenders, have concluded that the sale of the Leasehold Interests pursuant to the proposed Auction procedures is likely to produce the highest or best offer that could be reasonably be obtained for the Leasehold Interests.  The Trustee further believes the sale of the Leasehold Interests in accordance with the terms of the proposed form of order submitted herewith is in the best interests of the estates and their creditors.

54.     Approval of the sale of the Leasehold Interests at this point in the Debtors' cases is critical to maximizing the value of the Debtors' estates.  The present circumstances of the Debtors' cases necessitate selling the Leasehold Interests at this time.   In this regard, the Debtors' risk the deterioration in value of the Leasehold Interests if the Auction is not conducted and sales are not authorized promptly.  If the Debtors are forced to maintain and market the Leasehold Interests for an extended period of time, there is a high likelihood of the Leasehold Interests losing value to potential purchasers and increased administrative costs to the Debtors' estates.  Balanced against the substantial risks attendant to delay, it is in the Debtors' and the estates' best interests to proceed with the Auction at this time.

### DCP IS A GOOD FAITH BUYER WITHIN THE MEANING OF SECTION 363(M) OF THE BANKRUPTCY CODE

55.     Section 363(m) of the Bankruptcy Code provides that a purchaser of property of a Debtors' estates is protected from the effects of reversal on appeal of authorization to the debtor to sell such property as long as the purchaser acted in good faith and the appellant failed to

ME1 17474633v.3

obtain a stay of the sale order.[4]  Section 363(m) of the Bankruptcy Code "affords finality to judgments by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids."  *In re Chateaugay Corp.*, 1993 U.S. Dist. LEXIS 6130, * 9 (S.D.N.Y. May 10, 1993) (internal quotation marks and citation omitted); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal").

56.     The Bankruptcy Code does not define "good faith," but courts have adopted various definitions.  A good faith purchaser is "one who buys property . . . for value, without knowledge of adverse claims."  *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993).  The requirement that a purchaser act in good faith speaks to the integrity of the purchaser's conduct in the course of the sale proceeding.  *See In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

57.     The terms of the Credit Bid was negotiated at arm's-length, without collusion or fraud, in good faith and all of the terms of the Credit Bid have been disclosed.  DCP and the Trustee are not related companies and do not share corporate officers or directors.  The terms of the Credit Bid do not personally benefit the Trustee.  These negotiations have involved substantial time and energy by the parties and their professionals.  Accordingly, the Trustee requests that the Court determine that DCP has acted in good faith, has bought for value and is entitled to the protections of a good faith purchaser provided by section 363(m) of the

---

[4]  Section 363(m) of the Bankruptcy Code provides that: *The reversal or modification on appeal of an authorization under subsection (b) or subsection (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease was stayed pending appeal.*  11 U.S.C. § 363(m).

Bankruptcy Code.  *See In re United Press Int'l, Inc.*, Case No. 91-B-13955, 1992 Bankr. LEXIS

842, ** 3, 10 (Bankr. S.DN.Y. May 18, 1992).

**GOOD CAUSE EXISTS TO APPROVE THE TERMS AND
CONDITIONS OF THE AUCTION AND SALE**

58.    The Auction (and the procedures leading up to the Auction) will enable the

Estates to realize the maximum values of the Leasehold Interests and is in the best interest of the

Debtors' estates and their creditors.  The Trustee believes that the Auction will generate interest

and bidding, and that the bidding process will yield the highest and best bids for the Leasehold

Interests.  If, however, the Trustee fails to receive adequate bids on the Leasehold Interests, the

Trustee submits that he should have the discretion, in accordance with the terms and conditions

set forth herein, to withdraw the Leasehold Interests during the Auction.  Finally, the Trustee

believes that the protections contemplated in the Bidding Procedures are reasonable and

appropriate under the circumstances and should be approved.

**WAIVER OF STAY OF ORDER**

59.    Bankruptcy Rule 6004(h) provides that an order authorizing the use, sale, or lease

of property is stayed until the expiration of 14 days after entry of the order, unless the court

orders otherwise." Fed. R. Bankr. P. 6004(h).  The Trustee requests that any order approving the

Credit Bid (or the Bidding Procedures in connection with the proposed sale thereunder) be

effective immediately by providing that the fourteen (14) day stays under Bankruptcy Rule

6004(h) is waived.

60.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an

objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to

Fed. R. Bankr. P. 6004(h).  Although Bankruptcy Rule 6004(h) and the Advisory Committee

Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen

(14) day stay period, *Collier* suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Lawrence P. King, *Collier on Bankruptcy*, 6004.10 (16th ed. 2010).  *Collier* further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party. *Id*.

61.    To maximize the value received for the Leasehold Interests, the Trustee seeks to close the proposed sale as soon as possible after the Sale Approval Hearing, subject to the terms of the Credit Bid or any other Successful Bidder's asset Credit Bid and the Successful Bidders' closing conditions (if any).  Accordingly, the Trustee hereby requests that the Court waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h) or, in the lesser alternative, if an objection to the sale is filed and overruled by the Court, reduce the stay period to the minimum amount of time needed by the objecting party to seek a stay pending appeal.

## NO PRIOR REQUEST

62.    No prior request for the relief sought in this Motion has been made to this or any other court.

## NOTICE

63.    This Motion has been provided to the Notice Parties.  In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is required beyond the notice provisions described in this Motion.

## NO NOVEL ISSUES

64.    The Debtors submit that this Motion does not present any novel issues of law requiring briefing.  Therefore, pursuant to *Rule* 7.1.2 of the *Local Rules of Civil Practice and*

*Procedure* of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference into Del. Bankr. L.R. 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

65.     The Trustee proposes that absence of an objection to the relief sought in this Motion be deemed consent within the meaning of section 363(f)(2) of the Bankruptcy Code. *See Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D. N.J. 1994) (by not objecting to the sale motion, the secured creditor was deemed to consent under section 363(f)(2) of the Bankruptcy Code); *see also Pelican Homestead & Sav. A'ssn v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).   Accordingly, the Trustee requests that the sale of the Leasehold Interests to the Successful Bidder be free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances, if any, attaching to the proceeds of the sale of the Leasehold Interests.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court enter an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

ME1 17474633v.3

Dated: April 11, 2014               **McCARTER & ENGLISH, LLP**
       Wilmington, Delaware


       By:   */s/ Katharine L. Mayer*
             Katharine L. Mayer (DE # 3758)
             405 N. King Street, 8th Floor
             Wilmington, DE  19801
             Tel: 302-984-6300
             Fax: 302-984-6399
             kmayer@mccarter.com

                 — and —

             Charles A. Stanziale, Jr., Esq.
             Jeffrey T. Testa, Esq.
             Curtis A. Johnson, Esq.
             Four Gateway Center
             100 Mulberry Street
             Newark, NJ  07102
             Tel:  973-622-4444
             Fax:  973-297-3823
             cstanziale@mccarter.com
             jtesta@mccarter.com
             cjohnson@mccarter.com

             *Counsel to Charles A. Stanziale, Jr.,*
             *the Chapter 7 Trustee*

ME1 17474633v.3