## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | : Chapter 7 |
| TELETOUCH COMMUNICATIONS, INC., *et al.*, | : |
| | : Case No. 13-12620 (MFW) |
| Debtors. | : Jointly Administered |
| | : |
| | : **Hearing Date: January 6, 2016, at 2:00 p.m.** |
| | : **Obj. Date: December 29, 2015, at 4:00 p.m.** |

**MOTION OF CHAPTER 7 TRUSTEE PURSUANT TO BANKRUPTCY CODE
SECTIONS 105 AND 363 AND RULES 2002, 6004, AND 9014 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR (I) AN ORDER (A)
APPROVING THE STALKING HORSE AGREEMENT OF SALE RELATING TO THE
SALE OF A BILLBOARD AND RELATED REAL PROPERTY, SUBJECT TO HIGHER
AND BETTER OFFERS, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
AND OTHER INTERESTS; (B) APPROVING THE BREAK-UP FEE AND EXPENSE
REIMBURSEMENT; (C) APPROVING THE NOTICE AND SALE PROCEDURES
RELATED THERETO, AND (D) SETTING AUCTION AND HEARING DATES; AND
(II) AN ORDER (A) APPROVING THE SALE OF THE BILLBOARD AND RELATED
REAL PROPERTY, AND (B) GRANTING RELATED RELIEF**

Charles A. Stanziale, Jr. (the "Trustee" or the "Seller"), in his capacity as the duly

appointed, qualified and serving Chapter 7 Trustee of Teletouch Communications, Inc.

("Teletouch") and Progressive Concepts, Inc. ("Progressive" and with Teletouch, collectively,

the "Debtors") hereby submits this Motion (the "Motion"), pursuant to sections 105(a) and 363

of Title 11 of the United States Code, §§ 101-1532 (as amended, the "Bankruptcy Code") and

Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and Rule 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of

the United States Bankruptcy Court for the District of Delaware (collectively, the "Local

Rules"), for entry of (i) an order (a) approving the terms of the stalking horse agreement of sale

substantially in the form attached hereto as Exhibit C (the "Purchase Agreement[1]"), to Mike

---

[1] Terms not defined herein shall have the meanings ascribed to them in the Purchase Agreement.

Smith and Evan I. Shaw (collectively, the "<u>Purchaser</u>" or the "<u>Stalking Horse Bidder</u>") or another bidder submitting the highest or best offer for the Billboard and the Billboard Property relating to the sale of a billboard and the real property surrounding the billboard located at 705 East Daggett Avenue, Fort Worth, Tarrant County, Texas 76104 (the "<u>Billboard</u>" and the "<u>Billboard Property</u>"), subject to higher and better offers, free and clear of liens, claims, encumbrances and interests, (b) approving a Break-Up Fee and Expense Reimbursement; (c) approving the notice and sale procedures related thereto, and (d) setting auction and hearing dates (collectively, the "<u>Bidding Procedures Order</u>" attached hereto as <u>Exhibit A</u>); and (ii) an order at the final hearing (a) approving the sale of the Billboard and the Billboard Property, and (b) granting related relief (collectively, the "<u>Sale Approval Order</u>" attached hereto as <u>Exhibit B</u>").  In support of this Motion, the Trustee respectfully represents as follows:

## I.    JURISDICTION, VENUE AND PREDICATES FOR RELIEF

1.    The United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The predicates for the relief requested herein are sections 105(a) and 363(b), (f) and (m) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014, and the applicable Local Rules of the United States Bankruptcy Court for the District of Delaware.

## II.    BACKGROUND

### A.    <u>General Background</u>

1.    On October 3, 2013 (the "<u>Petition Date</u>"), the Debtors filed their respective voluntary petitions for relief under chapter 7 of the Bankruptcy Code in the Bankruptcy Court.

ME1 21191049v.2

2.      On October 3, 2013, the Office of the United States Trustee for the District of Delaware appointed Charles A. Stanziale, Jr. as the Chapter 7 Trustee for the Debtors.

3.      On November 12, 2013, the Bankruptcy Court entered an *Order Directing Joint Administration of the Debtors' Chapter 7 Cases Pursuant to Federal Rule of Bankruptcy Procedure 1015(b)*.

4.      Prior to the Petition Date, Teletouch had offered a comprehensive suite of telecommunications products and services, including cellular, two- way radio, GPS-telemetry, wireless messaging and public safety equipment.  Teletouch acted as a primary authorized services provider and billing agent of AT&T Products and Services to consumers, governmental agencies and businesses.

5.      Progressive is the primary operating business of Teletouch and is a wholly owned subsidiary of Teletouch.  Progressive operated a national distribution business serving national cellular carrier agents as well as auto dealers and consumer electronics retailers with product sales and support.

6.      Effective March 11, 2014, the Trustee had retained Johnson, Fretty and Company to seek a purchaser for the Billboard and the Billboard Property.  The term of the retention has expired.

7.      After a series of negotiations, the Trustee has decided to accept $30,000 (the "Purchase Price") for the sale of the Billboard and the Billboard Property.

8.      The Trustee believes that the sale of the Billboard and the Billboard Property would be in the best interests of the creditors of the Debtors' Estate.

9.      The Billboard Property represents the only remaining real property to be administered by the Trustee in the Debtors' Estate.

3

B.    **The Debtors' Debt Structure**

10.    On April 30, 2008, the Debtors executed a Loan and Security Agreement (as amended from time to time, the "Thermo Loan Agreement") with Thermo Credit, LLC ("Thermo"), to secure a revolving credit facility in a maximum amount of up to $5,000,000, which debt was evidenced by several notes executed by the Debtors and payable to Thermo, and secured by liens on all or substantially all of the prepetition assets of the Debtors.  Upon information and belief, as of August 11, 2013, the Debtors were indebted to Thermo in the amount of $2,873,287.75 under the Thermo Loan Agreement and the loan documents related thereto.

11.    On February 8, 2013, Teletouch and Progressive entered into a Loan and Security Agreement (as amended from time to time, the "DCP Loan Agreement") with DCP Teletouch Lender, LLC ("DCP"), which provided Teletouch and Progressive with (i) a revolving credit facility in a maximum amount of $6.0 Million, and (ii) a maximum of up to $2.0 Million pursuant to a standby term loan.

12.    The DCP Loan Agreement and certain related loan documents (the "DCP Loan Documents") granted DCP liens and security interests on certain assets of the Debtors, including all money, cash, cash equivalents, accounts, deposit accounts and deposits, inventory, equipment, fixtures, goods, chattel paper, electronic chattel paper, tangible chattel paper, documents, instruments, letters of credit, letter of credit rights, supporting obligations, commercial tort claims, books and records, real property interests, general intangibles (including all intellectual property, payment intangibles, contract rights, choses in action, and software), and all of Debtors' other interests in property of every kind and description, and the products, profits, rents of, dividends or distributions on, accessions to, and all proceeds (including tort claims, insurance claims and insurance proceeds) of any of the foregoing, and all rights and remedies applicable to

4

such property; and further including, without limitation, all rights of the Debtors to proceeds arising under agreements with AT&T, including, without limitation, upon the exercise by Progressive of the AT&T transfer right and/or upon the termination or expiration of the AT&T agreements.

13.     On February 8, 2013, Thermo and DCP also entered into that certain Subordination and Intercreditor Agreement (the "Subordination Agreement") wherein Thermo agreed to subordinate the indebtedness and security interests of the Debtors to Thermo under the Thermo Loan Agreement and related loan documents to the indebtedness and security interests of the Debtors to DCP Loan Agreement and related loan documents.  As a result of the Subordination Agreement, Thermo's secured claims and liens are subordinate to DCP's secured claims and liens.

14.     While DCP has a lien on the Billboard, it does not have a lien on the Billboard Property.

### III.    SUMMARY OF RELIEF REQUESTED

15.     This Motion seeks entry of an order (i) approving the sale of the Billboard and the Billboard Property, (ii) approving the Purchase Agreement attached hereto as Exhibit C or a substantially similar sale agreement with the Successful Purchaser, (iii) authorizing the Trustee to sell the Billboard and the Billboard Property free and clear of all liens, claims, encumbrances, and interests, and (iv) approving a break-up fee and expense reimbursement if the Trustee closes on the Billboard and/or the Billboard Property with a third-party purchaser other than the Stalking Horse Bidder, subject to the terms in this Motion.

## IV.    THE PROPOSED SALE

### A.    The Billboard and the Billboard Property

16.    Upon information available to the Trustee, the Billboard and the Billboard Property is located on the east side of Interstate Highway 35 West, north of Daggett Avenue. The street address is 705 East Daggett Avenue, Fort Worth, Tarrant County, Texas 76104.  The Billboard is two-sided, 14' x 48', and is located in the center of the site consisting of approximately 0.0872 acres or 2,798 SF.  The Tarrant County Tax website also refers to the site as the "Boaz Summitt Addition, Blk 1, Lot 6, 6-10'Alley W Blk 1".

17.    The Chapter 7 Trustee seeks to sell and transfer the right, title and interest, and goodwill of Debtors' Estate, in or associated with, the Billboard and the Billboard Property for the benefit of creditors and the Debtors' Estate.

18.    The Trustee, in the exercise of his business judgment, has determined that the Purchase Price represents the highest and best offer for the Billboard and the Billboard Property and that a prompt sale of the Billboard and the Billboard Property will maximize value for the Debtors' Estate.  The Purchaser has, among other things, agreed to purchase the Billboard and the Billboard Property free and clear of any liens, claims and interests.

19.    The sale of the Billboard and the Billboard Property will assist the Trustee in his efforts to limit administrative costs.

20.    The Trustee proposes to sell the Billboard and the Billboard Property to the Purchaser, subject to higher or better offers.  The proposed sale will be on an "as is," "where is," basis.

ME1 21191049v.2

B.     **Disclosures Under Local Rule 6004-1(b)(iv)**

21.     Pursuant to Local Rule 6004-1(b)(iv), the Trustee sets forth the following

disclosures relating to the proposed sale to the Purchaser:

- **Purchase Price**:  The purchase price offered by the Purchaser is $30,000 (the "Purchase Price"), which shall be allocated $15,000 to the Billboard and $15,000 to the Billboard Property, subject to higher or better offers as more fully described in the Motion.

- **Deposit**:  A deposit in the amount of $3,000 has been tendered, which is being held in an account maintained by the Trustee on behalf of the bankruptcy estate.

- **Not a Sale to an Insider**:  The sale is not to an insider.

- **Agreements with Management**:  No agreements with management have been entered into in connection with the sale.

- **Private Sale/No Competitive Bidding**:  The sale is being conducted pursuant to the competitive bidding process detailed in the Motion.

- **Closing and Other Deadlines**:  The consummation of the transaction, unless otherwise agreed to by the parties, and satisfaction or waiver of each of the other conditions to Closing (other than the conditions with respect to action the parties will take at the Closing itself) shall take place at a closing (the "Closing") to be held at the offices of the Trustee (McCarter & English, Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102) (or at such other place as the parties may designate in writing) within two (2) business days of entry by the Bankruptcy Court of a final, non-appealable Sale Approval Order, free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the proceeds of sale, unless another time or date, or both, are agreed to in writing by the parties.

- **Interim Arrangements with Proposed Buyer**:  The Trustee has not entered into any interim arrangements with the Purchaser.

- **Break-Up Fee and Expense Reimbursement**:  If the Seller closes on the Billboard and the Billboard Property with a third-party purchaser, Purchaser shall be entitled to a break-up fee of $900 (the "Break-Up Fee") and shall be entitled to seek reimbursement through the Bankruptcy Court upon proper application of any reasonable due diligence expenses not to exceed $1,000 (the "Expense Reimbursement[2]").  The Break-Up Fee and Expense Reimbursement must be approved by the Bankruptcy Court.

---

[2] For the sake of clarity, if DCP elects to credit bid for the Billboard pursuant to its lien rights and is deemed the Successful Purchaser and closes on the Billboard, then Purchaser shall only be entitled to a Break-Up Fee on the

- **Right to Credit Bid by DCP on the Billboard**:  DCP shall be entitled to credit bid on the Billboard up to the remaining portion of its secured lien.

- **Sale Free and Clear**:  The Trustee is seeking to sell the Debtors' Billboard and the Billboard Property free and clear of liens and other interests pursuant to Section 363(f) of the Bankruptcy Code.

- **Relief from Bankruptcy Rule 6004(h)**:  As noted in the Motion, the Trustee is requesting relief from the 14-day stay imposed by Rule 6004(h).  The value of the Debtors' Billboard and the Billboard Property is deteriorating with the passage of time.  Absent relief from the stay provisions of Rule 6004(h), the delay in Closing will result in further deterioration of the value of the Billboard and the Billboard Property.

22.    The Purchaser, in making this offer, acknowledged and agreed that the sale of the Billboard and the Billboard Property is subject to higher and better offers for the Billboard and the Billboard Property, and the Bankruptcy Court's approval.

### C.    The Proposed Bidding & Sale Procedures

23.    The proposed sale of the Billboard and the Billboard Property is subject to a competitive auction process that will assure that the maximum value for the Billboard and the Billboard Property will be realized for the Debtors' estates  (collectively, the "Debtors' Estate") and the Debtors' creditors.

24.    The Trustee shall forward the complete Motion to the Purchaser, counsel for the Purchaser, the Master Service List, including the United States Trustee and counsel for DCP, and any party known by the Trustee to have expressed an interest in the Billboard or the Billboard Property.

25.    Pursuant to the procedures described below, among other things, within seven (7) days of entry of the Bidding Procedures Order, the Trustee will serve a notice referencing the bid deadline, the auction date and the Sale Hearing (the "Notice of Bid Deadline, Auction, and Sale

---

Billboard in the amount of $450 and an Expense Reimbursement not to exceed $500.  The Purchaser shall only be entitled to the full Break-Up Fee of $900 and an Expense Reimbursement not to exceed $1,000 if the Seller closes on the Billboard with a third-party Qualified Bidder other than DCP and closes on the Billboard Property with any third-party Qualified Bidder, including DCP.

ME1 21191049v.2

Hearing") (which is annexed to the Bidding Procedures Order as <u>Exhibit 1)</u> together with a copy

of the Bidding Procedures (which is annexed to the Notice of Bid Deadline, Auction and Sale

Hearing as Exhibit A) on the (i) the Core Service List consisting of (a) the Office of the United

States Trustee for the District of Delaware, (b) counsel to the Debtors, (c) counsel to the Chapter

7 Trustee, (d) the Internal Revenue Service, and (e) DCP Teletouch Lenders, LLC, and (ii) the

Master Service List consisting of (a) any parties whose interests are directly affected by a

specific pleading including all known lienholders of the Debtors, and (b) those persons and

entities who have formally appeared and requested service, all in accordance with the *Bidding*

*Procedures Order* which is anticipated will be entered in the Debtors' cases (collectively, the

"<u>Auction Notice Parties</u>").

26.     The Notice of Bid Deadline, Auction, and Sale Hearing with the attached Bidding

Procedures will give the Auction Notice Parties the ability to submit higher or better offers.  In

addition, the Auction Notice Parties will receive reasonable notice of the Sale Hearing to

consider the proposed sale and have an opportunity to object thereto.

27.     Pursuant to Rule 2002(l), the Trustee proposes to publish a shortened summary

version of Notice of Bid Deadline, Auction, and Sale Hearing (the "<u>Publication Notice</u>"), at least

once, in a newspaper, publication or website the Trustee may choose to advertise, in his sole

discretion,  as soon as reasonably practicable after the entry of the Bidding Procedures Order.

28.     The Trustee reserves the right, in his sole discretion, to amend the Bidding

Procedures up to the time of the Auction, subject to approval of the Stalking Horse Bidder as to

any amendment that affects the Stalking Horse Bidder.

29.     The Preliminary Hearing to seek the entry of an order approving the Bidding

Procedures is intended to, among other things, approve the Trustee's solicitation of qualified

offers for the Billboard and Billboard Property, establish the form and manner of notice of the

proposed sale and establish the Bidding Procedures by which qualified parties may participate in the Auction. The proposed Bidding Procedures provide, in relevant part, as follows:

30.     The Trustee submits that the form and manner of the notice proposed herein constitutes good and sufficient notice of the sale of the Billboard and the Billboard Property and the Sale Hearing because such notice is reasonably calculated to provide timely and adequate notice to the Debtors' known and unknown creditors, all parties that possess or allege a secured interest in any of the Billboard and the Billboard Property, those persons and entities that are likely to have an interest in submitting a competing bid, and to any interested parties who are unknown to the Trustee and the Trustee's professionals. Therefore, the Trustee submits that no other or further notice of the Auction, the sale of the Billboard and the Billboard Property, and the Sale Hearing need be given.

31.     Any Potential Bidder shall submit a higher or better offer ("Alternative Bid") for the Billboard and the Billboard Property by **January 26, 2016, at 1:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline") so such Alternative Bid is actually received on or before the Bid Deadline.

32.     A Potential Bidder that desires to submit an Alternative Bid for the Billboard and the Billboard Property shall deliver written copies of its bid to: (i) counsel to the Trustee, (a) McCarter & English, LLP, Renaissance Centre, 405 N. King Street, 8th Floor, Wilmington, DE 19801, Attn: Katharine L. Mayer, Esq. and (b) McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, NJ 07102, Attn: Jeffrey T. Testa, Esq.; (ii) the Purchaser, (a) Attn: Mike Smith, 2653 Perth Street, Dallas, TX 75220, and (b) counsel to the Purchaser, Sara J. Evans, Esq., 14160 Dallas Parkway, Suite 800, Dallas, TX 75254; and (iii) counsel to DCP, (a) Dennis A. Meloro, Esq., Greenberg Traurig, LP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington,  DE  19801, Attn: Dennis A. Meloro, Esq., and (b) Pepper

10

Hamilton, LLP, Hercules Plaza, Suite 5100, 1313 Market Street, P.O. Box 1709, Wilmington,

Delaware  19899-1709, Attn: Donald J. Detweiler, Esq.

33.    Any Alternative Bid <u>must</u>:

- be a written irrevocable cash offer, in an amount not less than $45,000, with the price allocated between the Billboard and the Billboard Property, which includes a credit equal to the Break-Up fee and expense reimbursement;

- include a good-faith deposit in the form of a certified check or cashier's check in an amount not less than $4,500 made payable to "Charles A. Stanziale, Ch. 7 Trustee of Progressive Concepts, Inc." or delivered via wire transfer;

- a representation that (i) the Potential Bidder agrees to serve as the Back-Up Bidder in the event that its bid is the second highest or otherwise best Qualified Bid, (ii) the Potential Bidder is not an insider of the Debtor or provides a disclosure as to its relationship with the Debtor; and (iii) the Potential Bidder will complete all its due diligence prior to the commencement of the Auction;

- include an executed asset purchase agreement, subject to substantially the same or more favorable terms and conditions as are contained in, and marked to show changes from, the Purchase Agreement (as reasonably determined by the Trustee) (the "<u>Marked Purchase Agreement</u>"), except that such purchase and sale agreement shall (a) provide for a purchase price in cash of at least $45,000, allocated price between the Billboard and the Billboard Property,  which includes a credit equal to the Break-Up fee and expense reimbursement, (b) exclude any contingencies, conditions precedent or other terms excusing the performance of the Potential Bidder based upon it completing due diligence or obtaining financing for the sale, and including only such representations and warranties as may be approved by the Trustee, which approval shall be granted or denied in Seller's sole and absolute discretion (provided, however, that under no circumstances shall Trustee and/or the Debtor have any liability for any breach of any representation and warranty; the Trustee is selling its right, title and interest in the Billboard and Billboard Property described in the Purchase Agreement 'AS IS' and any buyer should conduct whatever diligence is necessary to satisfy such Potential Bidder that the representations and warranties are true and correct), and (c) exclude any provision for any break-up fee, termination fee, expense reimbursement, or similar type of payment; and

ME1 21191049v.2

- state that the Potential Bidder offers to consummate the sale pursuant to an agreement that has been marked to show amendments and modifications to the Stalking Horse Sale Agreement, including the allocated price between the Billboard and the Billboard Property, and other terms, that are being proposed by the Potential Bidder, as applicable, and enclose a copy of the proposed Marked Purchase Agreement;

- deliver financial information by the Bid Deadline to demonstrate its financial wherewithal to consummate the sale; and

- include provisions that (i) the Potential Bidder shall be able to close on the sale within two (2) business days of entry of a final, non-appealable Sale Approval Order, (iv) the Potential Bidder maintain the confidentiality of information obtained re the sale; and (ii) the Seller may seek to close on the sale with the next highest bidder if the Successful Purchaser fails to close on the sale.

34.    Any Potential Bidder desiring additional information concerning the Billboard and the Billboard Property may request same upon written notice to the Trustee.  The Trustee will designate a representative to coordinate all reasonable requests for additional information from a Potential Bidder.  All information to be provided is for informational purposes only and neither the Trustee nor his professionals make any warranties or representations with regard to same.  Each Potential Bidder shall execute a Confidentiality Agreement stating that it will not use any confidential information for any purpose other than submitting a bid.

If Alternative Bids are received and are deemed qualified by the Trustee to participate in the Auction (each a "Qualified Bid" and each party a "Qualified Bidder"), the Auction shall be governed by the following procedures:

- only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction[3].  At the Auction, bidding shall begin at an over the highest Qualified Bid, but not less than $45,000, which includes a credit equal to the Break-Up fee and expense reimbursement, and subsequently continue in minimum increments of at least $5,000.

- only Qualified Bidders shall be entitled to make any subsequent bids at the Auction and only Qualified Bidders and their respective authorized representatives are entitled to attend/and or participate at the Auction;

---

[3] DCP is automatically deemed a Qualified Bidder.

ME1 21191049v.2

- each Qualified Bidder shall appear in person at the Auction or via telephonic conference or through a duly authorized representative who appears in person at the Auction;

- each of the Qualified Bidders may make additional modifications to their respective purchase agreements at the Auction, but only to the extent that such modifications do not disqualify the Qualified Bidders;

- the Auction will be conducted openly and each Qualified Bidder will be informed of the terms of the previous bids;

- each Qualified Bidder shall confirm at the Auction that it has not engaged in any collusion with respect to the bidding or the proposed sale of the Property; and

- the bidding at the Auction will be transcribed.

Upon conclusion of the bidding, the Auction shall be closed, and the Trustee shall (a) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the proposed sale of the Billboard and the Billboard Property, and (b) as soon as reasonably practicable thereafter (i) identify the highest, best or otherwise financially superior offer for the Billboard and the Billboard Property (the "<u>Successful Bid</u>") and the entity submitting such Successful Bid (the "<u>Successful Purchaser</u>"), which highest, best or otherwise financially superior offer will provide the greatest amount of net value to the Trustee and the Debtors' creditors, (ii) identify the second highest, best or otherwise financially superior offer for the Billboard and the Billboard Property (the "<u>Back-Up Bid</u>") and the entity submitting such Back-Up Bid (the "<u>Back-Up Bidder</u>"), and (iii) advise the Qualified Bidders of the identities of the Successful Purchaser and the Back-Up Bidder.

<u>**Acceptance of Qualified Bids**</u>:  The Trustee shall sell the Billboard and the Billboard Property to the Successful Purchaser upon the approval of the Successful Bid at the Sale Hearing.  The Trustee's presentation of a particular Qualified Bid to the Court for approval does not constitute the Trustee's acceptance of the bid.  While the Successful Bid is binding on the Qualified Bidder who submitted such bid, the Trustee will be deemed to have accepted a bid only when the acceptance of the Successful Bid has been approved by the Court at the Sale Hearing.  All interested parties reserve their right to object to the Trustee's selection of the Successful Purchaser and the Successful Bid.

<u>**Sale Hearing**</u>:  A final hearing to consider approval of the Successful Purchaser and sale will take place before the Honorable Mary F. Walrath, Judge, in the Bankruptcy Court, 824 N. Market Street, 5th Floor, Courtroom #4, Wilmington, Delaware 19801**, on February 3, 2016, at 2:00 p.m. (prevailing Eastern Time).** At or before the Sale Hearing, the Sale Hearing may be adjourned or rescheduled without prior notice.  No party will be permitted to bid at the Sale Hearing.

**Return of Good Faith Deposits:** The Good Faith Deposits shall be held in a segregated escrow account and shall be returned to the depositing party within three (3) business days following the Auction, unless: (i) the depositing party makes the Successful Bid and the Successful Bid provides for such party's deposit to be applied to the purchase price; or (ii) the depositing party makes the Successful Bid and fails to proceed to closing of the Sale, in which case the Deposit shall become property of the Debtors' Estate.

**Closing of the Sale:** Closing to occur at a time mutually agreeable to the Trustee and the Successful Purchaser, but no later than two (2) business days after entry of entry of a final, non-appealable Sale Approval Order, unless mutually agreed upon by the Trustee and the Successful Purchaser. In the event that the Sale fails to close during such time period, then the Seller shall be authorized, but not required, to consummate the Sale with the Back-Up Bidder. The Backup Bidder shall be announced at the close of the Auction and shall be provided with ten (10) business days to close after notification by the Trustee of the Successful Purchaser's failure to close.

**Modifications**: The Trustee reserves the right to modify, adjourn, or extend any of the deadlines established herein. Notice of any such modification, adjournment, or extension shall be provided only to the Qualified Bidders and the Seller. The Trustee also reserves the right to modify any of the Bidding Procedures (subject to approval of the Stalking Horse Bidder as to any amendment that affects the Stalking Horse Bidder) in any manner that, in his judgment, will better promote the goals of the Auction, so long as such modifications are not materially inconsistent with any of the provisions of the Bidding Procedures outlined herein, any Bankruptcy Court order, including the Bidding Procedures Order or materially adverse to the Stalking Horse Bidder.

35.     The sale of the Billboard and the Billboard Property shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Trustee or his representatives. All of the Trustee's right, title and interest in and to the Billboard and the Billboard Property shall be sold free and clear of all claims, which claims shall attach to the proceeds of the sale.

36.     The Trustee submits that these procedures are fair and reasonable, and provide the best means of ensuring that the Trustee obtains the highest and best offer for the Billboard and the Billboard Property. As such, the sale of the Billboard and the Billboard Property pursuant to the procedures referenced above will be in the best interests of the Debtors' creditors.

ME1 21191049v.2

37.     If no Alternative Bid is submitted by the Bid Deadline, then the Trustee shall seek authority from the Bankruptcy Court to consummate the sale to the Stalking Horse Bidder.

38.     The proposed Sale Approval Order will (i) approve the sale of the Billboard and the Billboard Property to the Successful Purchaser at the conclusion of the auction, if any, authorizing the Trustee to (i) proceed with the transaction to the Successful Purchaser (ii) include a specific finding pursuant to section 363(m) of the Bankruptcy Code that the purchaser is a good faith buyer, (iii) order that pursuant to section 363(f) of the Bankruptcy Code, the sale shall be on an "AS IS" "WHERE IS" basis and free and clear of all liens, claims, encumbrances and interests whatsoever, with such liens, claims, encumbrances and interests attaching to the net proceeds of the sale, and (iv) authorize the Trustee to consummate the sale and to arrange for the mutual execution of all necessary documents, agreements and contracts in conjunction therewith.

### D.     The Break-Up Fee and the Expense Reimbursement

39.     The Stalking Horse Bidder, in making this offer, acknowledged and agreed that the sale of the Billboard and the Billboard Property, pursuant to the terms of the Purchase Agreement, is subject to higher and better offers for the Billboard and the Billboard Property, and the Bankruptcy Court's approval.

40.     In making its offer, the Stalking Horse Bidder, proceeded in reliance that the Trustee would seek the Bankruptcy Court's approval of a Break-Up Fee, and in reasonable expectation that the Bankruptcy Court would enter an order approving the Break-Up Fee.

41.     The Trustee, in the exercise of his business judgment, believes that the Break-Up Fee is a necessary inducement for the Stalking Horse Bidder, and that such a protection will both establish a "floor" for the liquidation of the Billboard and the Billboard Property and ultimately encourage competitive bidding and realization of the highest value for the Billboard and the Billboard Property.

ME1 21191049v.2

42.    The Trustee proposes that if overbidding occurs at the Auction, the Stalking Horse Bidder shall have the right, but not the obligation, to participate in overbidding subject only to the limitations provided by the Bidding Procedures.    However, to compensate the Stalking Horse Bidder for allowing the auction process to commence and serving as a "stalking horse," thereby subjecting its bid to higher or otherwise better offers, the Trustee seeks authority to pay to the Stalking Horse Bidder the Break-Up Fee in the event the Bankruptcy Court enters the Sale Approval Order in favor of a Successful Purchaser who is not the Stalking Horse Bidder and the Stalking Horse Bidder is not in default under the Purchase Agreement.

43.    The Trustee believes that approval of the Break-Up Fee will enable the Trustee to assure a sale of the Billboard and the Billboard Property to a contractually committed bidder at a price the Trustee believes is fair and reasonable, while providing the Trustee with the opportunity to obtain even greater benefits for the Debtors' creditors through an auction process. Thus, approval of the Break-Up Fee may lead to an increase in the amount of proceeds of the sale and the establishment of a baseline against which higher or otherwise better offers will be measured.  If an Auction ensues, the Break-Up Fee is reasonably calculated to encourage higher or otherwise better bids.  If no Auction ensues, the Break-Up Fee will not be paid.

44.    Moreover, the amount of the Break-Up Fee is reasonably calculated to compensate the Stalking Horse Bidder (a) for the time expended performing due diligence, (b) for lost opportunity in being bound to a transaction that could be topped in a competitive auction process, and (c) for serving as a "stalking horse" to encourage the submission of other bids.

45.    Accordingly, the Trustee submits that the Break-Up Fee (a) represents a sound exercise of his business judgment, (b) is the product of extensive arm's-length negotiations with the Stalking Horse Bidder, (c) is fair and reasonable, given the benefits to the Debtors' Estate and its creditors of having a definitive Purchase Agreement weighed against the risk to the

Stalking Horse Bidder that a third-party's competing offer may ultimately be accepted, and (d) is necessary to maximize the proceeds of the sale of the Billboard and the Billboard Property.

46.      In addition, the Trustee proposes that the Purchaser shall be entitled to seek reimbursement through the Bankruptcy Court upon proper application of any reasonable due diligence expenses not to exceed $1,000 (except as set forth herein) if it is not named the Successful Purchaser by the Seller and the Seller proceeds to closing with a third-party purchaser.

## V.  BASIS FOR RELIEF REQUESTED

### A.      There is Sound Business Justification for the Sale of the Billboard and the Billboard Property

47.      The Trustee submits that ample authority exists for the approval of the sale of the Billboard and the Billboard Property to the Purchaser.  Section 363(b) of the Bankruptcy Code permits a trustee to sell assets outside of the ordinary course of business.  Section 363(b) of the Bankruptcy Code provides, in pertinent part,  that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  Section 105(a) of the Bankruptcy Code further provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  In pertinent part, Bankruptcy Rule 6004 states that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  Fed. R. Bankr. P. 6004(f)(1).

48.      Courts interpreting section 363(b)(1) of the Bankruptcy Code have held that transactions should be approved when they are supported by the sound business judgment of the trustee.  *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification and good faith tests of *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *In*

ME1 21191049v.2

*re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in *Abbotts Dairies*); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions").

49.     There is sound business justification for the Trustee's decision to sell the Billboard and the Billboard Property to the Purchaser.  The Purchaser has a more vested interest in the Billboard and the Billboard Property because it is ready to proceed to closing without delay. The Trustee has negotiated the terms of the sale with the Purchaser, which terms are superior to those the Trustee anticipates would be obtained from a third-party buyer.

50.     As a result of the Purchaser's interest in the Billboard and the Billboard Property, the Trustee believes that the Debtors' Estate would benefit from the approval of the sale of the Billboard and the Billboard Property to the Purchaser.

**B.     The Sale of the Billboard and the Billboard Property Should be Approved <u>Free and Clear of All Encumbrances</u>**

51.     Section 363(f) of the Bankruptcy Code permits a trustee to sell property free and clear of another party's interest in the property if:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

ME1 21191049v.2

11 U.S.C. § 363(f).  Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will be sufficient to permit the sale of the Billboard and the Billboard Property free and clear of all encumbrances that may be asserted herein.  *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (sale "free and clear" may be approved provided the requirements of at least one subsection are met); *see also In re Dundee Equity Corp.,* 1992 Bankr. LEXIS 436, * 12 (Bankr. S.D.N.Y. Mar. 6, 1992) (a "sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

52.     At the Sale Hearing the Trustee will demonstrate that, to the extent any valid lienholders exist, one or more of the tests of section 363(f) will be satisfied with respect to the transfer of the Billboard and the Billboard Property (or to a third party deemed to be the Successful Purchaser other than the Purchaser).  Accordingly, section 363(f) authorizes the transfer and conveyance of the Billboard and the Billboard Property free and clear of any such claims, interests, encumbrances and liens.

53.     The Trustee proposes that absence of an objection to the relief sought in this Motion be deemed consent within the meaning of section 363(f)(2) of the Bankruptcy Code.  *See Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to the sale motion, the secured creditor was deemed to consent under section 363(f)(2) of the Bankruptcy Code); *see also Pelican Homestead & Sav. A'ssn v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).  Accordingly, the Trustee requests that the sale of the Billboard and the Billboard Property to the Purchaser be free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances, if any, attaching to the proceeds of the sale of the Billboard and the Billboard Property.

### C.    Purchaser is a Good Faith Buyer Within the Meaning of Section 363(m) of the Bankruptcy Code

54.    Section 363(m) of the Bankruptcy Code provides that a purchaser of property of a debtor's estate is protected from the effects of reversal on appeal of authorization to the debtor to sell such property as long as the purchaser acted in good faith and the appellant failed to obtain a stay of the sale order.[4]  Section 363(m) of the Bankruptcy Code "affords finality to judgments by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids."  *In re Chateaugay Corp.*, 1993 U.S. Dist. LEXIS 6130, * 9 (S.D.N.Y. May 10, 1993) (internal quotation marks and citation omitted); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal").

55.    The Bankruptcy Code does not define "good faith," but courts have adopted various definitions.  A good faith purchaser is "one who buys property . . . for value, without knowledge of adverse claims."  *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993).  The requirement that a purchaser act in good faith speaks to the integrity of the purchaser's conduct in the course of the sale proceeding.  *See In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

56.    The terms of the sale was negotiated at arm's-length, without collusion or fraud, in good faith and all of the terms of the sale have been disclosed.  The Purchaser and the Trustee are not related.  The negotiations have involved substantial time and energy by the parties and

---

[4]    Section 363(m) of the Bankruptcy Code provides that:
The reversal or modification on appeal of an authorization under subsection (b) or subsection (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease was stayed pending appeal.

11 U.S.C. § 363(m).

ME1 21191049v.2

their professionals.  Accordingly, the Trustee requests that the Bankruptcy Court determine that the Purchaser has acted in good faith, has purchased the property for value and is entitled to the protections of a good faith purchaser provided by section 363(m) of the Bankruptcy Code.  *See In re United Press Int'l, Inc.*, Case No. 91-B-13955, 1992 Bankr. LEXIS 842, ** 3, 10 (Bankr. S.DN.Y. May 18, 1992).

### D.    The Notice of the Sale Hearing Is Appropriate

57.    The Trustee believes that he will obtain the maximum recovery for creditors of the Debtors' Estate if the Billboard and the Billboard Property of the Debtors are sold through an advertised sale and potential auction.

58.    Under Bankruptcy Rules 2002(a) and (c), the Trustee is required to notify creditors of the proposed sale of the Debtors' Billboard and the Billboard Property, including a disclosure of the time and place of an auction, if any, the terms and conditions of a sale, and the deadline for filing any objections.  The Trustee submits that the notice procedures herein comply fully with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the sale by auction to the Debtors' creditors and other interested parties, as well as to those parties who have expressed an interest, or may express an interest; in bidding on the Billboard and the Billboard Property.  The proposed time frame between the filing of this Motion and the Sale Hearing should provide Potential Bidders ample time to submit an offer pursuant to the procedures described above.

### E.    The Break-Up Fee Should be Approved

59.    The Stalking Horse Bidder proceeded in reliance that the Trustee would seek a Break-Up Fee and in reasonable expectation that the Bankruptcy Court would enter an order providing such relief.  The Trustee submits that the Break-Up Fee is a normal and oftentimes necessary component of sales outside the ordinary course of business under section 363 of the

21

Bankruptcy Code.  In particular, such protections encourage a potential purchaser to invest the requisite time, money and effort to conduct due diligence and sale negotiations with a debtor despite the inherent risks and uncertainties of the bankruptcy sale process.  *See, e.g., In re Comdisco, Inc.*, Case No. 01-24795 (Bankr. N.D. Ill. Aug. 9, 2002) (approving a termination fee as, inter alia, an actual and necessary cost and expense of preserving the debtor's estate, of substantial benefit to the debtor's estate and a necessary inducement for, and a condition to, the proposed purchaser's entry into the purchase agreement); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 660 (S.D.N.Y. 1992) (noting that fees may "'be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking'") (internal citations omitted); *In re Hupp Indus.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1997) (without any reimbursement, "bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's. . . due diligence"); *In re Marrose Corp.*, Nos. 89 B 12171 to 89 B 12179, 1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992) (stating that, "[a]greements to provide breakup fees or reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers"); *Samjens Partners I v. Burlington Indus., Inc.*, 663 F. Supp. 614, 624 (S.D.N.Y. 1987) (concluding that bidding incentives may be "legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking").

60.    Moreover, bid protections, similar to the Break-Up Fee sought to be approved by this Motion, have been approved in other bankruptcy cases in the Bankruptcy Court.  *See, e.g., In re Nortel Networks Inc.*, Case No. 09-10138 (Bankr. D. Del. Feb. 27, 2009) (approving $650,000 break-up fee in connection with $17.65 million sale, or 5.9%); *In re Tallvgenicom, L.P.*, Case

No. 09-10266 (Bankr. D. Del. Feb. 19, 2009) (approving $2 million break-up fee in connection with $36.6275 million sale, or 5.5%); *In re Carolina Fluid Handling Intermediate Holding Corp (f/k/a Fluid Routing Solutions Intermediate Holding Corp.)*, No. 09-10384 (Bankr. D. Del. Feb. 19, 2009) (court approved expense reimbursement of up to $1.25 million in connection with a $11 million sale, or up to 11.4%); *In re Archway Cookies LLC*, Case No. 08-12323 (Bankr. D. Del. Dec. 3, 2008) (approving $750,000 break-up fee in connection with a $25 million sale, or 3.8%); *In re Wickes Holdings, LLC, et al.*, Case No. 08-10212 (KJC) (Bankr. D. Del. Feb. 19, 2008) (authorizing debtor to enter into stalking horse agreement providing break-up fee of up to 3%); *In re Tweeter Home Entm't Group, Inc.*, Ch. 11 Case No. 07-10787 (PJW) (Bankr. D. Del. July 13, 2007) (authorizing debtor to pay stalking horse's termination fee); *In re Radnor Holdings*, Case No. 06-10110 (Bankr. D. Del. Sept. 22, 2006) (aggregate fee and expense reimbursement of 3% permitted).

61.     A proposed bidding incentive, such as the Break-Up Fee should be approved when it is in the best interests of the estate.  *In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr. N.D. Ill. 1995) (stating that the "test is whether the payment … is in the best interests of the estate); *see also In re America West Airlines, Inc.*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (same); *In re Hupp Indus., Inc.*, 140 B.R. at 193-95 (same).  Typically, this requires that the bidding incentive provide some benefit to the debtor's estate.  *See Calpine Corp.*, 181 F.3d at 533 (holding even though bidding incentives are measured against a business judgment standard in non-bankruptcy transactions the administrative expense provisions of Bankruptcy Code section 503(b) govern in the bankruptcy context).

62.     In *Calpine Corp*, the Third Circuit found that whether break-up fees and expenses could be paid to Calpine Corp. ("Calpine") as a "stalking horse" depended on whether such fees were necessary to preserve the value of the estate.  *O'Brien Envtl. Energy*, 181 F.3d at 536.  The

court determined that Calpine's right to break up fees and expenses depended on whether it provided a benefit to the debtor's estate by promoting competitive bidding or researching the value of the assets at issue to increase the likelihood that the selling price reflected the true value of the company. *Id.* at 537. The Trustee submits that approval of this Break-Up Fee will create a competitive bidding process.

63.     First, the Break-Up Fee induced the Stalking Horse Bidder to submit a bid that will serve as a minimum floor bid upon which other bidders may rely. In addition, the Stalking Horse Bidder's rapid entry into the sale agreement benefitted the Debtors' Estate by allowing the Trustee to file this Motion prior to any significant depreciation in value to the Billboard and the Billboard Property, which may be incurred by a period of extended inactivity. Therefore, the Stalking Horse Bidder has provided a material benefit to the Debtors' Estate and their respective creditors by encouraging bidding and increasing the likelihood that the best possible price for the Billboard and the Billboard Property will be received. *See, e.g., In re Comdisco, Inc.*, No. 01 B 24795 (RB) (Bankr. N.D. Ill. Aug. 9, 2002) (finding proposed termination fee to be of substantial benefit to the debtor's estate); *In re Kmart Corp.*, No. 02 B 02474 (SPS) (Bankr. N.D. Ill. May 10, 2002); Integrated Res., 147 B.R. at 659 (noting that termination payment is an "important tool to encourage bidding and to maximize the value of the Billboard and the Billboard Property.

64.     Second, the proposed Break-Up Fee is the result of an arm's-length negotiated agreement between the Trustee and the Stalking Horse Bidder. There is no evidence or reason to believe that the relationship between the Trustee, the Debtors' Estate and the Stalking Horse Bidder has been tainted by self-dealing or manipulation.

65.     Third, the Trustee believes that the proposed Break-Up Fee is fair and reasonably compensates the Stalking Horse Bidder for taking actions that will benefit the Debtors' Estate.

The Break-Up Fee compensates the Stalking Horse Bidder for diligence and professional fees incurred in negotiating the terms of the Purchase Agreement on an expedited timeline.

66.     Fourth, the Trustee does not believe that the Break-Up Fee will have a chilling effect on the sale process.  Rather, the Stalking Horse Bidder has increased the likelihood that the best possible price for the Billboard and the Billboard Property will be received, by permitting other qualified bidders to rely on the diligence performed by the Stalking Horse Bidder, and moreover, by allowing Qualified Bidders to utilize the Purchase Agreement as a platform for negotiations and modifications in the context of a competitive bidding process.

67.     Fifth, the Break-Up Fee being requested is extremely fair in that it represents only 3% of the Purchase Price, which is substantially less than the maximum usually afforded to stalking horse bidders in these types of sales.

68.     Finally, the Break-Up Fee will be paid only if, among other things, the Trustee enters into and closes a transaction with a bidder other than the Stalking Horse Bidder. Accordingly, no Break-Up Fee will be paid unless a higher and better offer is achieved and consummated.

69.     In sum, the Break-Up Fee is reasonable under the circumstances and will enable the Trustee to maximize the value for the Billboard and the Billboard Property while limiting any chilling effect in the sale process.  The Break-Up Fee not only compensates the Debtors' Estate for the risk that its assumes in foregoing a known, willing and able purchaser for a new potential acquirer, but also ensures that there is an increase in the net proceeds received by the Debtors' Estate, after deducting the Break-Up Fee to be paid to the Stalking Horse Bidder in the event of a prevailing overbid.

ME1 21191049v.2

**F.      Relief Under Bankruptcy Rule 6004(h) is Appropriate**

70.      Bankruptcy Rule 6004(h) provides that an order authorizing the use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Trustee requests that any order approving the Credit Bid (or the Bidding Procedures in connection with the proposed sale thereunder) be effective immediately by providing that the fourteen (14) day stays under Bankruptcy Rule 6004(h) is waived.

71.      The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen (14) day stay period, *Collier* suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Lawrence P. King, *Collier on Bankruptcy*, 6004.10 (16th ed. 2010). *Collier* further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party. *Id*.

72.      To maximize the value received for the Billboard and the Billboard Property, the Trustee seeks to close the proposed sale as soon as possible after the Sale Hearing, subject to the terms of the Purchase Agreement or any other Successful Purchaser's purchase agreement, if applicable, and the Successful Purchaser's closing conditions (if any). Accordingly, the Trustee hereby requests that the Bankruptcy Court waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h) or, in the lesser alternative, if an objection to the sale is filed and

26

overruled by the Bankruptcy Court, reduce the stay period to the minimum amount of time needed by the objecting party to seek a stay pending appeal.

> **F.**     <u>**No Prior Request**</u>

73.     No prior request for the relief sought in this Motion has been made to this or any other court.

## VI.  NOTICE

74.     This Motion has been provided in its entirety to counsel for the Purchaser, the United States Trustee, counsel for DCP, the Master Service List, and any party known to the Trustee who has previously expressed an interest in the Billboard or the Billboard Property.  In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is required.

## VII.  CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Trustee respectfully requests that the Bankruptcy Court (i) enter orders substantially in the forms attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>: (a) granting the relief requested herein and (b) granting to the Trustee such other and further relief as the Bankruptcy Court may deem just and proper, and (ii) approving the Purchase Agreement substantially in the form attached hereto as <u>Exhibit C</u>.

Dated: December 16, 2015         **McCARTER & ENGLISH, LLP**
      Wilmington, Delaware

By:   <u>*/s/ Katharine L. Mayer*</u>
Katharine L. Mayer, Esq. (DE # 3758)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Telephone:  (302) 984-6300
Facsimile:  (302) 984-6399
kmayer@mccarter.com

27

*- and -*

Charles A. Stanziale, Jr., Esq.
Jeffrey T. Testa, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
cstanziale@mccarter.com
jtesta@mccarter.com

*Attorneys for the Chapter 7 Trustee*